Argued January 23, reversed and remanded for new trial March 22, reconsideration denied April 7, petition for review denied May 11, 1976

NAPIER, *Respondent,*
*v.*
SHERIDAN et al, *Appellants.*
(No. 84748, CA 4332)
547 P2d 1399

*Michael Lehner,* Portland, argued the cause for appellants. On the briefs were Edward H. Warren, Donald E. Hershiser, and Hershiser, Mitchell & Warren, Portland.

*William E. Hurley,* Portland, argued the cause and filed the brief for respondent. With him on the brief were Bernard, Hurley, Hodges & Kneeland, Portland.

Before Schwab, Chief Judge, and Foley and Fort, Judges.

SCHWAB, C. J.

## SCHWAB, C. J.

Plaintiff sued defendant for both false arrest and malicious prosecution.[1] The trial court directed a verdict of liability on the false-arrest cause of action, and the jury awarded damages. The jury returned a verdict in favor of the plaintiff on the malicious-prosecution cause of action and awarded damages. Defendant contends that he was entitled to a directed verdict on both causes and that plaintiff was not entitled to a directed verdict on the false-arrest action.

The facts are as follows: Plaintiff was employed by one Praggastis to perform a variety of services. In connection with logging duties for Praggastis, plaintiff and one Swank were instructed to cut merchantable timber from the Praggastis property. Praggastis and one Keller had an agreement whereby plaintiff and Swank were also to cut certain merchantable timber on Keller's land. Although Keller showed plaintiff the property line between the Keller and the Praggastis property, the line to the north, where the Keller property adjoins a state-owned parcel, was not made clear. The state land is, however, separated by a fence, and the trees on it are a different variety. After logging through Keller's property in a northerly direction, plaintiff and Swank came to the state property which was bordered by a freeway right-of-way fence and an old barbed-wire fence. They entered the property, felled 19 trees and stacked some of them on state property and some in Keller's grain field. Part of the old fence was knocked down at some point in the operation.

A few days later Keller saw the logs and informed plaintiff that they had been cut on state land. Coincidentally, a resident of the area telephoned defendant at the state highway division office the same morning Keller talked to plaintiff and that person told defen-

[1]The state of Oregon was also named as a defendant on the basis of the doctrine of respondeat superior. For clarity, only the individual defendant will be referred to in the opinion.

dant that logging was being conducted on state land. Defendant and several others went immediately to the scene to investigate and then located plaintiff nearby. Upon being confronted with the fact that trees had been cut on state land, plaintiff admitted to the state personnel that he had done the logging. Plaintiff denied, though, that he knew the land belonged to the state at the time the trees were cut, stating that he had learned that fact from Keller only an hour or two earlier. During the interview, a log truck arrived to remove the logs, but it was sent away pending completion of the state's investigation. It is not clear who ordered the truck.

Defendant and the other state employes left, but on the advice of an assistant attorney general, they returned later that afternoon with a state policeman. Upon completing his investigation, the policeman stated that any arrest would have to be a citizen's arrest. Following a discussion of the evidence, the highway division personnel concluded that an arrest should be made. After defendant signed a citizen's arrest form, plaintiff was taken to the county jail and booked on a felony charge.

Subsequent to investigation by another police officer, Clackamas County Deputy District Attorney Parker concluded that it would be difficult to prove criminal intent, an element of the felony charged. He explained this to defendant and his supervisor the following morning at a meeting, discussed in more detail below. As a result of that meeting, defendant signed a complaint charging plaintiff with criminal trespass in the second degree. The prosecution of plaintiff on that charge terminated in his favor.

It is not unusual for actions for false arrest and malicious prosecution to be joined in the same complaint, as here. Nevertheless, the principles of law governing these actions are different, and consequently we discuss them separately.

Defendant contends that the trial court erred in directing a verdict in favor of plaintiff on plaintiff's cause of action for false arrest and in denying defendant's motion for a directed verdict in his favor. To recover, it was necessary for plaintiff to establish that defendant intended to confine him, that defendant did confine him, and that plaintiff was aware of his confinement. *See generally,* Restatement (Second) of Torts § 35 (1965). It is not disputed that these elements were established. Want of probable cause  which must be shown in an action for malicious prosecution, is not an issue in a false-arrest action.[2] Nevertheless, it is fundamental that the arrest must have been a *false* arrest, i.e., one made without legal authority. If the arrest was lawful, then it was privileged.

> "* * * Since some arrests are lawful and some are 'false,' the existence of the privilege to invade interests in personality which every arrest involves depends on the existence of the circumstances and conditions under which the law permits an arrest." 1 Harper and James, The Law of Torts 275, § 3.18 (1956).

At the time this action arose, the power of a private citizen to arrest another was governed by statute. Former ORS 133.350 (*repealed,* Oregon Laws 1973, ch 836, § 358, p 2814) provided:

> "A private person may arrest another for the causes specified in ORS 133.310 in like manner and with like effect as a peace officer without a warrant."

ORS 133.310 (*amended,* Oregon Laws 1973, ch 836, § 72, p 2725, and Oregon Laws 1974 (Special Session), ch 42, § 2, p 127) provided:

> "A peace officer may arrest a person without a warrant:
>
> "* * * * *
>
> "(2) When the person arrested has committed a felony, although not in his presence;

---

[2]Some of the confusion between false arrest and malicious prosecution concerns the role of probable cause. Generally speaking, probable cause is not a defense to the former action—it is to the latter. Restatement (Second) of Torts, § 45A, *comment d* at 71 (1965).

"(3) When a felony has in fact been committed * * * and he has reasonable cause for believing the person arrested to have committed it;

"* * * * *."

These statutes are a codification of the common law. Restatement (Second) of Torts §§ 118 and 119(a) and (b) (1965).

■ The question which must be answered is whether or not a felony, i.e., first degree theft or some other offense related to cutting trees on state property, was actually committed. If a felony was not committed, defendant was not privileged to arrest plaintiff regardless of whether he had a reasonable belief both that a felony had been committed and that defendant was guilty. 1 Harper and James, The Law of Torts 276, § 3.18 (1956). The Restatement comment concerning the common law equivalent of ORS 133.310(3) explains the necessity of an actual felony:

"In order that a private individual may be privileged to arrest another on suspicion of felony, it is necessary that an act or omission actually constituting a felony has been committed, and that the actor reasonably suspects that the other whom he arrests has committed that act or omission, and therefore has committed a felony. It is not enough that the actor, if a private person, believes no matter how reasonably that a felonious act has been committed, and that the other has committed it. Not only must the act of which the actor suspects the other have been committed, but the act must be a felony. The fact that an act has been committed and that the actor through a mistake of law or fact reasonably believes such act to be a felony does not give him any privilege to arrest another whom he knows or reasonably suspects of having committed the act, and this is true although the act, while not a felony, is a breach of the peace or misdemeanor * * *." Restatement (Second) of Torts § 119, *comment i* at 197 (1965).

■ The determination of whether a felony was committed is a question of fact for the jury, unless, of course, the facts are not in dispute and only one inference can be drawn from them. *See, State v. Knighten,* 236 Or

634, 636, 390 P2d 166, 167 (1964); *cf., Varner v. Hoffer,* 267 Or 175, 181, 515 P2d 920 (1973).

Here, the trial court stated that there was no evidence that a felony occurred and that the evidence was that it did not. However, plaintiff in effect admits that the only missing element to establish first degree theft, a Class C felony, was his intent to appropriate the trees.[3] That would necessarily present a jury question. *E.g., McNeff v. Heider,* 216 Or 583, 591, 337 P2d 819, 340 P2d 180 (1959) (dictum).

■ Different inferences concerning plaintiff's intent could be drawn from the facts. The jury could have found that plaintiff knew the state land did not belong to Keller and therefore intended to steal the trees. The state land is distinct: a road runs between the two parcels, the trees on the two tracts are different species, and the state land is surrounded by a unique fence which was cut where the trees were pulled out. On the other hand, plaintiff denied knowing the land was not Keller's when the trees were cut, and Keller testified that he did not think plaintiff knew the adjoining parcel was state land.

Since a jury question was raised, the trial court erred in directing a verdict for plaintiff. It also follows that defendant's motion for a directed verdict was properly denied.

■■ On retrial, if the jury decides that the trees were cut on state land under such circumstances as constituted a felony and that that felony was committed by plaintiff, then the arrest was lawful under ORS 133.310(2), and defendant was justified in making it. If by some chance there is evidence from which the jury could find that that felony was committed by someone other than the plaintiff, then an inquiry must be made to determine whether defendant had reasonable cause to believe that plaintiff committed that

---

[3] Although plaintiff asserts that defendant concedes that no felony was committed, defendant states only that it would be difficult to prove the element of intent.

felony. This is a question of law for the court as is probable cause in malicous prosecution. *Delp v. Zapp's Stores,* 238 Or 538, 395 P2d 137 (1964).

"\* \* \* However, if the facts are disputed, the jury must decide the facts, except that, even though the facts are disputed, the court decides the question of reasonableness, as a matter of law. The court performs this function, when the facts are disputed, by instructing the jury that if it finds the facts to be so and so, then such facts do, or do not, constitute reasonable cause; or, the court concludes that, accepting the disputed facts in the light most favorable to the plaintiff, such facts support only one conclusion,—the defendant had reasonable cause to believe the plaintiff had committed \* \* \* [a felony]." 238 Or at 542.

## II

Defendant also assigns as error the trial court's denial of his motion for a directed verdict on plaintiff's cause of action for malicious prosecution. Defendant contends that plaintiff failed to prove that the proceeding for criminal trespass was initiated without probable cause.

The probable-cause requirement was discussed in *Varner v. Hoffer,* 267 Or 175, 515 P2d 920 (1973). There the court stated:

"We have adopted 3 Restatement, Torts § 662, as a correct statement of when probable cause exists. \* \* \* Section 662, 3 Restatement, Torts, pp 403-404, provides:

" 'One who initiates criminal proceedings against another has probable cause for so doing if he

" '(a) reasonably believes that the person accused has acted or failed to act in a particular manner, and

" '(b)

" '(i) correctly believes that such acts or omissions constitute at common law or under an existing statute the offense charged against the accused, or

" '(ii) mistakenly so believes in reliance on the advice of counsel under the conditions stated in § 666.' " 267 Or at 179.

Defendant must have both a reasonable and a subjective belief in the guilt of the accused. *Gustafson v. Payless Drug Stores,* 269 Or 354, 357, 525 P2d 118 (1974). The question presented is whether the court erred in allowing the jury to determine the existence of probable cause.

Dean Prosser states the general rule regarding the functions of the court and the jury on the probable-cause issue as follows:

> "The courts have always distrusted malicious prosecution actions, and have retained a strong hand over them. For this reason the existence of probable cause, which involves only the conduct of a reasonable man under the circumstances, and does not differ essentially from the determination of negligence, usually is taken out of the hands of the jury, and held to be a matter for decision by the court * * *." Prosser, Torts 846-47, § 119 (4th ed 1971).

*See also,* 1 Harper and James, The Law of Torts 319, § 4.5 (1956). The Supreme Court approved this language in *Gustafson,* and then amplified the procedures to be followed:

> " 'If the facts or inferences are in dispute the jury must decide the facts and the court must instruct the jury what facts constitute probable cause.' *Varner v. Hoffer* supra (267 Or at 179). We pointed out that instructing on the issue of probable cause is very difficult when the jury can find a number of different fact combinations. Another possible procedure is to settle the factual disputes by having the jury answer special interrogatories. *Hess v. Oregon Baking Co.,* 31 Or 503, 511, 49 P 803 (1897). If such a procedure were used, the trial court would decide whether the plaintiff had probable cause based upon the facts found by the jury in answer to the interrogatories." 269 Or at 357-58.

We find no factual dispute concerning defendant's "reasonable belief," the first prong of the probable-cause test in the Restatement (Second) of Torts. It was entirely reasonable, as a matter of law, for defendant to believe that plaintiff went onto state land and cut down trees since plaintiff admitted to defendant that

he did so. Furthermore, there is no evidence that defendant did not subjectively believe this.

Resolution of the other prong of the probable-cause test is more difficult. Plaintiff contends that his actions did not constitute criminal trespass in the second degree, the crime with which he was charged, and that defendant did not rely on advice of counsel in believing that they did. Consequently, it is first necessary to determine whether the activities of plaintiff amounted to criminal trespass.

ORS 164.245 provides:

> "(1) A person commits the crime of criminal trespass in the second degree if he enters or remains unlawfully in or upon premises.
>
> "(2) Criminal trespass in the second degree is a Class C misdemeanor."

ORS 164.205(3)(a) defines "enter or remain unlawfully" as meaning:

> "To enter or remain in or upon premises when the premises, at the time of such entry or remaining, are not open to the public or when the entrant is not otherwise licensed or privileged to do so * * *."

"Open to the public" means:

> "* * * [P]remises which by their physical nature, function, custom, usage, notice or lack thereof or other circumstances at the time would cause a reasonable person to believe that no permission to enter or remain is required." ORS 164.205(4).

Although there is some confusion as to the exact nature of the fence around the state-owned parcel, defendant himself made it clear at trial that this land was open to the public.

> "Q [The land] was not posted at the time, was it?
> "A No.
> "* * * * *
>
> "Q There were some openings at least in this fence, weren't there, right?
> "A Yes.
> "* * * * *

"Q You had no objection to people going into that area, did you?

"A I can't personally think of any particular opposition as long as they weren't coming in and off the freeway to do it.

"Q In fact you know that I have been on that property, don't you?

"A You have said you have.

"Q And that didn't bother you, did it?

"A No.

"Q You regarded this as a place open to the public, did you not?

"A It wasn't restricted."

■ We find as a matter of law that plaintiff did not commit criminal trespass in the second degree. Therefore, defendant initiated the criminal proceedings without probable cause unless he did so on the advice of counsel. Defendant contends that he relied on the advice of a deputy district attorney and an assistant attorney general, and that as a result the court should have granted his motion for a directed verdict.

We must again examine the functions of the court and the jury.

"The question whether one who initiates criminal proceedings was entitled to rely upon the advice of an attorney, being a part of the issue of probable cause, is for the court to decide. This must be determined in the light of the circumstances as they existed at the time when the advice was sought, and it is for the jury to determine what the circumstances were. Thus, it is for the jury to determine what knowledge or information the accused had as to the competence and disinterested character of the attorney. It is for the court to determine whether, in view of these facts, the accuser was justified in relying upon the attorney's advice. Furthermore, *it is for the jury to determine whether the client sought the advice of his attorney in good faith* or whether the advice was sought to protect him from liability for initiating proceedings upon which he had already determined * * *." Restatement of Torts § 666, *comment g* at 420-21 (1938). (Emphasis supplied.)

Since there is no factual dispute concerning the substance of the conversations between defendant and the two attorneys, the principle set forth in Prosser, supra, indicates that the court, not the jury, should decide the good-faith question. For if good faith is left to the jury, whenever different inferences can arise from defendant's conduct, the duty of the court to determine the ultimate question of probable cause will be usurped. It is hard to conceive of a factual pattern from which two inferences concerning a defendant's state of mind, i.e., his good faith, could not be drawn.

The Oregon Supreme Court, however, apparently agrees with the Restatement of Torts comment quoted supra. In *Lampos v. Bazar, Inc.,* 270 Or 256, 527 P2d 376 (1974), defendant contended that he relied on the advice of the district attorney in initiating a criminal prosecution against plaintiff and that such reliance required the court to grant his motion for a directed verdict. In answer, the court stated:

> "Defendant may have relied in good faith upon the advice of the district attorney. The jury could have reasonably found, however, that Mr. Falk, by his attitude and conduct during the interview with plaintiff, had prejudged plaintiff's guilt and that he did not rely in good faith upon the advice of the district attorney." 270 Or at 269.

Although this is dictum, it is clear and recent. We feel bound by it. We hold that since this aspect of probable cause presented a jury question, the trial court acted properly in denying defendant's motion for a directed verdict.[4]

---

[4]For an example of authority reaching a contrary conclusion, see Montgomery Co. v. Pherson, 129 Colo 502, 272 P2d 643 (1954), in which the court held:

> "The evidence, it seems to us, clearly established that the defendants instituted the prosecution in good faith and on advice of counsel, and that under the evidence presented defendants' motion for a directed verdict in their favor should have been granted." 129 Colo at 513.

Nevertheless, we must remand the case for a new trial of the malicious-prosecution cause of action. The court instructed the jury that it found "* * * as a matter of law that the arrest and restraint of [plaintiff] in this case was wrongful and unlawful * * *." As we have pointed out in part I, above, this instruction erroneously invaded the province of the jury. It may well have influenced the jury's determination of whether defendant's reliance on counsel was in good faith. The jury's determination as to whether the arrest was lawful may be a factor in its resolution of the good-faith issue.

Reversed and remanded for a new trial.

The reasoning of the Supreme Court of Colorado reflects the courts' traditional distrust of actions for malicious prosecution. The court stated:

"* * * '* * * "In this class of cases the liability of juries to lose sight of the real issues, and to be influenced by sentiment, rather than the pertinent facts, is noted by careful observers. In the language of Mr. Newell: 'Our experience teaches us there are few questions of law more difficult of apprehension by a jury than those which govern trials for malicious prosecution. It seems difficult for them to appreciate, if the plaintiff was really innocent of the charge for which he was prosecuted, that he still ought not to recover. They do not readily comprehend why an innocent man may be prosecuted for a supposed crime or offense, and yet have no recourse against the prosecutor who caused his arrest and imprisonment.' Newell on Mal. Pros. 269." ' " 129 Colo at 512-13, quoting from Flader v. Smith, 116 Colo 322, 181 P2d 464, 468, 172 ALR 1335 (1947).