Elizabeth Ann NORTON, Appellee,

v.

UNITED STATES of America,
Appellant,

and

John Turner, Robert O'Brien,
Defendants.

No. 77–1919.

United States Court of Appeals,
Fourth Circuit.

Argued April 6, 1978.

Decided July 19, 1978.

Butzner, Circuit Judge, dissented and filed opinion.

*Gomes v. Brodhurst,* 394 F.2d 465 (3d Cir. 1967), *codified at* 5 V.I.C. § 1451 (1973). Given our disposition of the case, we do not reach these issues.

Paul Blankenstein, Atty., Appellate Section, Civ. Div., Dept. of Justice, Washington, D. C. (Barbara Allen Babcock, Asst. Atty. Gen., William B. Cummings, U. S. Atty., Alexandria, Va., and William Kanter, Appellate Section, Civ. Div., Dept. of Justice, Washington, D. C., on brief), for appellant.

John D. Grad, Alexandria, Va. (Philip J. Hirschkop, Hirschkop & Grad, P. C., Alexandria, Va., Arthur H. Blitz, Silver Spring, Md., Robert D. Salzer, Silver Spring, Md., on brief), for appellee.

Before WINTER, BUTZNER and WIDENER, Circuit Judges.

WINTER, Circuit Judge:

Elizabeth Ann Norton was awarded summary judgment against the United States and damages in the sum of $12,500 in her suit under the fourth amendment for violation by federal law enforcement officers of her rights secured by that amendment. In reaching this result, the district court ruled that the United States could not assert as a defense to its liability the good faith and reasonable belief of the officers in the legality of their conduct which provided the basis of the suit. *Norton v. Turner,* 427 F.Supp. 138 (E.D.Va.1977). The correctness of that ruling is the sole issue on appeal. We reverse and remand for further proceedings.

I.

At approximately eight o'clock on the evening of March 15, 1975, the Alexandria, Virginia, Police Department received an anonymous telephone call advising that the nationally-sought federal fugitive Patricia Hearst was occupying an apartment in the Alexandria area. Federal arrest warrants for her arrest were outstanding. The FBI was immediately notified and, at approximately 9:30 p. m. on the same evening, four FBI agents, together with two local detectives, arrived at the reported address. After surveying the site for approximately thirty minutes, the officers sought entry into the suspect apartment. The officers had been warned that Ms. Hearst should be considered armed and dangerous. No search warrant was either sought or obtained.

The apartment was that of plaintiff who was alone in the apartment. Since it was ten o'clock at night and her door had no peephole for viewing visitors, she refused to admit the agents. Conversation ensued. Unable to prevail upon plaintiff to open the door, the agents began a forcible entry.

Plaintiff, fearing that the door would be destroyed, unlatched the lock and the law enforcement officers entered with weapons drawn. A search of the apartment revealed no traces of either Patricia Hearst or her suspected companions. After concluding that the anonymous tip was either a hoax or an attempt by a disgruntled neighbor to harass plaintiff, the officers departed.

Plaintiff subsequently brought this suit for damages against both the law enforcement officers involved and the United States. Suit against the local police officers was brought under 42 U.S.C. § 1983, while suit against the federal agents was brought directly under the fourth amendment to the Constitution of the United States. *See Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). Both the local and federal agents defended the suit, *inter alia*, on the ground that they acted in good faith and with a reasonable belief in the lawfulness of their actions. Damages were claimed against the United States under the Federal Tort Claims Act (FTCA), then recently amended to allow suit against the United States where federal investigative or law enforcement officers commit certain types of intentional torts in the course of conducting searches or making arrests. Pub.L. No. 93–253, § 2, 88 Stat. 50 (1974) (amending 28 U.S.C. § 2680(h)).[1] The United States also defended on the ground, *inter alia*, of the good faith and reasonable belief in the lawfulness of their actions on the part of its agents.

On cross-motions for summary judgment, the district court first determined that the officers' entry into and search of the apart-ment had violated plaintiff's fourth amendment rights since the officers had insufficient cause to believe that Hearst was inside plaintiff's apartment. 427 F.Supp. at 143–44. With respect to the good-faith and reasonable-belief defenses of the individual defendants, the court concluded that unresolved issues of facts made summary judgment inappropriate. *Id.* at 145–46. As to the United States, however, summary judgment was entered for the plaintiff. After carefully considering both the legislative history surrounding the enactment of the 1974 amendment to the Federal Tort Claims Act and the policy implications of expanded governmental liability thereunder, the district court concluded that proof of a constitutional violation by federal law enforcement officers is sufficient *per se* to render the government liable for any damages sustained as a result of the unconstitutional conduct. *Id.* at 146–52. Stated otherwise, the United States could not defend its liability on the basis of its agents' good faith and reasonable belief even if it could prove both. Thereafter, upon motion of plaintiff, the district court dismissed the suit against the individual defendants and entered judgment against the United States in the amount of $12,500. This appeal followed.

## II.

■ In this appeal the government does not contest the district court's finding that a violation of plaintiff's fourth amendment rights occurred. Nor does it dispute the applicability of 28 U.S.C. § 2680(h), as amended in 1974, to the instant action. The amendment to § 2680(h) is clearly intended to waive the federal government's sovereign-immunity defense in suits brought to

1. Pub.L. 93–253, § 2, amended 28 U.S.C. § 2680(h) by adding a proviso to it. Section 2680 is the portion of the Federal Tort Claims Act which excepts certain claims from the general waiver of sovereign immunity, thus preserving sovereign immunity as to them. Subsection (h) preserves immunity with respect to claims arising out of false imprisonment, false arrest, etc., and the proviso reads:

That, with regard to acts or omissions of investigative or law enforcement officers of the United States Government, the provi-sions of this chapter [Tort Claim Procedures] and section 1346(b) of this title *shall apply* to any claim arising, on or after the date of the enactment of this proviso, out of assault, battery, false imprisonment, false arrest, abuse of process or malicious prosecution. For the purpose of this subsection, "investigative or law enforcement officer" means any officer of the United States who is empowered by law to execute searches, to seize evidence, or to make arrests for violations of Federal Law. (Emphasis added.)

redress violations of the fourth amendment committed by federal law enforcement officers. *See* S.Rep. No. 93–588, 93rd Cong., 2d Sess., *reprinted in* [1974] U.S.Code Cong. & Admin.News, p. 2789.

■ What is the only issue raised by the government in this appeal is the extent of its liability under FTCA. The United States urges that its liability is no greater than that of its employees. It submits that, under both traditional principles of *respondeat superior* and established FTCA precedent, it is entitled to assert all defenses available to its agents individually, including the defenses of good faith and reasonable belief. Plaintiff, on the other hand, urges that we uphold the district court's more expansive view of governmental liability. We adopt the more limited view of liability urged upon us by the government and hold that the liability of the United States under § 2680(h) is coterminous with the liability of its agents under *Bivens*.

### III.

In 1971, the Supreme Court announced a federal damages remedy to redress violations of the fourth amendment by federal law enforcement officers. *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, supra*. While *Bivens* created a federal cause of action sounding in tort cognizable in federal courts under 28 U.S.C. § 1331, it did not delineate the scope of the officer's tort duty. On remand, the Second Circuit concluded that an officer's tort duty under *Bivens* should not be coextensive with his constitutional duty under the fourth amendment. Looking to the traditional doctrine of police-officer liability for common-law torts, the court concluded that an individual officer should escape personal liability if he establishes that he acted "in good faith and [with a] reasonable belief in the validity of the arrest and search and in the necessity for carrying out the arrest and search in the way the arrest was made and the search was conducted." 456 F.2d 1339, 1348 (2 Cir. 1972). This definition of an individual officer's tort duty under *Bivens* has been widely accepted.[2]

While *Bivens* created a federal tort for certain violations of the fourth amendment, it did not (and indeed could not) impose liability on the officer's employer, the federal government. The federal fisc was protected by the traditional doctrine of sovereign immunity.[3] The inability to secure a remedy against the United States severely restricted the effectiveness of the *Bivens* remedy. As Senator Percy remarked after conducting hearings into the much-publicized Collinsville drug raids in which innocent persons suffered not insubstantial abuse at the hands of federal narcotics agents:

> While [*Bivens*] gives victims of abusive tactics some opportunity for relief, their remedy is severely limited by the ease with which agents can usually establish the defense of having acted in good faith and with probable cause. Moreover, causes of action against officials as individuals will, on occasion, be virtually worthless since government employees

---

2. *See, e. g., G. M. Leasing v. United States*, 560 F.2d 1011, 1015 (10 Cir. 1977), *cert. denied*, 435 U.S. 923, 98 S.Ct. 1485, 55 L.Ed.2d 516 (1978); *Ervin v. Ciccone*, 557 F.2d 1260, 1262 (8 Cir. 1977); *Rodriguez v. Ritchey*, 539 F.2d 394, 400–01 (5 Cir. 1976); *Mark v. Groff*, 521 F.2d 1376, 1379–80 (9 Cir. 1975); *Apton v. Wilson*, 165 U.S.App.D.C. 22, 506 F.2d 83 (1974); *Tritsis v. Backer*, 501 F.2d 1021, 1022–23 (7 Cir. 1974). While this court has never directly held that a *federal* law enforcement officer is entitled to assert the good-faith and reasonable-belief defenses when confronted with a *Bivens* claim, we have so held as to local law enforcement officers who are sued under 42 U.S.C. § 1983. *Hill v. Rowland*, 474 F.2d 1374 (4 Cir. 1973). In relying heavily on the Second Circuit's analysis in *Bivens*, *Hill* clearly implies (and we agree) that the scope of liability should be the same for federal, state and local law enforcement officers, regardless of whether the claim is predicated on § 1983 or on *Bivens*.

3. It was reasoned that the tort created by *Bivens* was an intentional tort and that suit against the United States was therefore barred by 28 U.S.C. § 2680(h) which, prior to 1974, flatly excepted from FTCA "[a]ny claim arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights."

may be so lacking in funds as to be judgment proof.

S.Rep. No. 93–469, 93rd Cong., 1st Sess. 36 (1973) (individual views of Senator Percy).

Consistent with these remarks, Senator Percy proposed a rider to H.R. 8245 [4] "to provide a remedy against the United States for the intentional torts of its investigative and law enforcement officers." S.Rep. No. 93–588, *supra*, [1974] U.S.Code Cong. & Admin.News at 2789. Enacted in March, 1974, as Pub.L. No. 93–253, § 2, this legislation amended FTCA so as to create an exception to the intentional-tort exception of 28 U.S.C. § 2860(h).

### IV.

In waiving sovereign immunity with regard to intentional torts committed by federal investigative or law enforcement officers, Congress did not enact a discrete statutory provision; rather, it used as its vehicle the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671 *et seq.* Section 2674, which waives the sovereign immunity of the United States and thus renders it liable for the torts described in the Act, states that the United States "shall be liable . . . *in the same manner and to the same extent as a private individual under like circumstances* . . ." (emphasis added). Section 1346(b), the basic jurisdictional grant of FTCA, vests exclusive jurisdiction in United States district courts over suits involving

claims against the United States, for money damages, accruing on and after January 1, 1945, for injury or loss of

property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, *under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or. omission occurred.* (Emphasis added.)

As evidenced by the clear language of these provisions as well as by subsequent case law, Congress did not intend to create substantive federal law in enacting FTCA; it limited the liability of the United States to vicarious liability for the acts or omissions of its employees which, in turn, were tortious under the law of the place where the acts or omissions occurred. Both the precipitating tort and the scope of the government's vicarious liability were to be governed by "the law of the [state] where the act or omission occurred." *See Laird v. Nelms*, 406 U.S. 797, 801, 92 S.Ct. 1899, 32 L.Ed.2d 499 (1972); *Richards v. United States*, 369 U.S. 1, 6–7, 82 S.Ct. 585, 7 L.Ed.2d 492 (1962).

It is therefore incongruous that Congress utilized FTCA as the means of waiving sovereign immunity in the *Bivens* context. *Bivens* created a *federal* tort, and the scope of governmental liability under the 1974 amendment presents essentially a question of federal law.[5] Instead of looking to a particular state's doctrine of *respondeat superior*, as we would in the typical FTCA case,[6] we must seek to determine

---

4. Then pending before the Senate Government Operations Committee, H.R. 8245 concerned the reorganization of various drug law enforcement agencies.

5. *Cf. Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, supra*, 403 U.S. at 409, 91 S.Ct. 1999 (Harlan, J., concurring). In finding a federal damages remedy directly under the fourth amendment to be an appropriate exercise of judicial power, Mr. Justice Harlan cites as one reason the need for fourth amendment violations to "be compensable according to uniform rules of federal law." Clearly a necessary component to such uniformity is a

federal rule as to the scope of the government's vicarious liability under FTCA. Therefore, we find it inappropriate, as the government would have us do, to rely upon traditional state-law doctrines of *respondeat superior*. See n.8 *infra*.

6. *See, e. g., Williams v. United States*, 350 U.S. 857, 76 S.Ct. 100, 100 L.Ed. 761 (1955), *vacating*, 215 F.2d 800 (9 Cir. 1954); *James v. United States*, 467 F.2d 832 (4 Cir. 1972); *Yates v. United States*, 365 F.2d 663 (4 Cir. 1966); *Jennings v. United States*, 291 F.2d 880 (4 Cir. 1961).

the scope of liability intended by Congress in enacting the 1974 proviso to § 2680(h).[7]

The plain language of the amendment offers no clue as to congressional intent with regard to the scope of the government's liability. Indeed, reading only the amendment itself, one might even question its applicability to the federal tort created by *Bivens*. The statutory language, as well as the placement of the waiver within the confines of FTCA,[8] suggests that its applicability is limited to suits alleging certain state-created intentional torts committed by federal law enforcement officers. The legislative history, however, makes clear that the 1974 amendment was viewed by Congress as "a counterpart to the *Bivens* case. . . ." S.Rep. No. 93–588, *supra*, [1974] U.S.Code Cong. & Admin.News at 2791.

While the legislative history makes clear that the federal government may be sued for *Bivens* torts committed by its agents, the history is not as clear with regard to the intended scope of the government's vicarious liability.[9] It was the district court's view that on balance the legislative history

disclosed an intent to impose liability on the government for fourth amendment violations irrespective of any individual defenses that might be asserted. We think not.

Senate Report No. 93–588, which accompanied the amendment to § 2680(h), states that the amendment "should be viewed as a counterpart to the *Bivens* case and its progenty [sic], in that it waives the defense of sovereign immunity so as to make the Government independently liable in damages *for the same type of conduct that is alleged to have occurred in Bivens (and for which that case imposes liability upon the individual Government officials involved).*" S.Rep. No. 93–588, *supra*, [1974] U.S.Code Cong. & .Admin.News at 2791 (emphasis added). We think that this explanation of purpose strongly suggests an intent to allow vicarious liability only in those cases where individual liability would lie under *Bivens*. The district court concluded, however, that this expression of purpose was outweighed by other evidence in the legislative history indicating a more expansive view of governmental liability.

---

**7.** We view this case solely as one of statutory interpretation. While we recognize the force of the district court's policy arguments in favor of expanded liability, 427 F.Supp. at 150–52, they are largely irrelevant to our decision. If we were writing on a clean slate, the policy arguments of both parties would receive our careful attention; however, where Congress has spoken, as it has here by means of the 1974 amendment to § 2680(h), we must be guided not by our own policy judgments but by those of Congress.

**8.** The government has argued both in the court below and before us that the preexisting structure of FTCA and the case law arising thereunder support its view that the government is entitled to assert the defenses of its agents to defeat plaintiff's claim. Specifically, the government has argued (1) that § 1346(b) makes the government liable only for tortious conduct and that in the *Bivens* context no tortious conduct occurs unless the constitutional violation is committed either in bad faith or with an unreasonable belief; (2) that the imposition of liability without regard to the individual motives or beliefs is tantamount to the imposition of absolute liability, which would contravene two Supreme Court decisions holding that the FTCA will not support "the imposition of strict liability of any sort upon the Govern-

ment," *Laird v. Nelms, supra,* 406 U.S. at 803, 92 S.Ct. at 1902; *see also Dalehite v. United States,* 346 U.S. 15, 73 S.Ct. 956, 97 L.Ed. 1427 (1953); and (3) that the defenses of good faith and reasonable belief constitute a privilege rather than an immunity and that under general *respondeat superior* doctrine a principal has a defense if his agent had a privilege which he properly exercised in his principal's behalf. Restatement (2d), Agency, § 217(a)(iii) (1958). While each of these arguments supports the result we reach, we do not ground our decision on these rationale. Despite the amendment's placement in FTCA, we are convinced that the waiver of sovereign immunity to *Bivens*-type liability is *sui generis* and therefore the structure of FTCA, prior cases construing other provisions of FTCA or general principles of *respondeat superior* in interpreting the 1974 amendment, singly or in combination, does not answer the question before us.

**9.** For a detailed account of the legislative history surrounding enactment of the amendment, *see* J. Boger M. Gitenstein, P. Verkuil, The Federal Tort Claims Act Intentional Torts Amendment: An Interpretive Analysis, 54 N.C. L.Rev. 497, 505–17 (1976); *see also Norton v. Turner, supra,* 427 F.Supp. at 148 n.11.

*First*, the district court concluded that the overall tenor of the Senate Report reflects a concern with providing an effective remedy to individuals whose fourth amendment rights have been violated. As we read that report, however, we think that it shows a concern with providing an effective remedy "for innocent victims of Federal law enforcement *abuses*." S.Rep. 93–588, *supra*, [1974] U.S.Code Cong. & Admin. News at 2792 (emphasis added). It must be remembered that Congress passed this legislation in the wake of the Collinsville drug raids where government officials had engaged in what may fairly be described as outrageous behavior.[10] As the report stresses, it is the *type* of conduct alleged both in *Bivens* and by the victims of the Collinsville raids—intentional and abusive conduct on the part of law enforcement officers—about which Congress was concerned. It was, we think, to remedy these more egregious wrongs that Congress waived sovereign immunity.

*Second*, the district court thought that other documents in the legislative history— specifically Senator Percy's remarks quoted earlier and a memorandum prepared by the staff of the Senate Government Operations Committee—provide direct support for the conclusion that Congress intended to impose vicarious liability without regard to individual defenses. While we recognize that both of these documents support this conclusion, we do not think that they are entitled to the weight accorded them by the district court.[11] What must guide us is not Senator Percy's intent nor the intent of the committee staff, but rather the intent of Congress. We therefore give most weight to Senate Report No. 93–588, which represents the explanatory remarks of the committee. The Senate Report itself contains none of the clear language found in Senator Percy's remarks or in the staff memorandum. To the contrary, a fair reading of the Report supports the government's position that the remedy against the government under FTCA is inextricably tied to the remedy against the individual officer under *Bivens*.[12]

## V.

The decision we reach is also supported by the well-established principle of statutory interpretation that "statutes which waive immunity of the United States from suit are to be construed strictly in favor of the sovereign." *McMahon v. Unit-*

---

10. For a vivid description of the Collinsville raids, *see* J. Boger, *et al*. The Federal Tort Claims Act Intentional Torts Amendment, *supra*, 54 N.C.L.Rev. at 500–02 (1976).

11. In the Boger, Gitenstein and Verkuil article, *supra* n.9, it is suggested that the staff memorandum is conclusive as to congressional intent:

> On one point, however, the Senate committees were clearly insistent on distinguishing their recommendation from prior law. The federal government was not to be allowed to escape liability under the new statute by retreating behind various "defenses" that had been created under *Bivens* or section 1983. . . . Thus, despite the constant reference in legislative documents to *Bivens* and section 1983, the proposed federal liability was meant to differ in this very crucial aspect from its historical analogues.

54 N.C.L.Rev. at 515.

The fact is that the memorandum was not made part of the legislative record; it was not referred to, nor mentioned at any point during the legislative consideration of the 1974 amend-

ment. Indeed, we call attention to footnote 15 of the district court's opinion, 427 F.Supp. at 150, where the court acknowledges that it was unable to secure a copy of this memorandum in the legislative documents available. Instead the court was forced to rely upon the Boger, Gitenstein and Verkuil article both for proof of the existence of the memorandum and for its contents. If, as the article's authors say, the committee was "clearly insistent" on the point and if this is what the committee clearly "meant," the committee's failure to note this departure from *Bivens* clearly in its report is totally inexplainable.

12. The district court also placed weight on other language in the report suggesting an intent to impose liability when federal agents act in "bad faith or without probable cause" or when searches are conducted "without warrants or with warrants issued without probable cause." 427 F.Supp. at 149. To the extent that either of these phrases support an expansive view of governmental liability, we discount them as attributable to imprecise draftsmanship.

*ed States*, 342 U.S. 25, 27, 72 S.Ct. 17, 19, 96 L.Ed. 26 (1951). While we are mindful of Mr. Justice Frankfurter's admonition not to view ourselves as a "self-constituted guardian of the Treasury [importing] immunity back into a statute designed to limit it," *Indian Towing Co. v. United States*, 350 U.S. 61, 69, 76 S.Ct. 122, 126, 100 L.Ed. 48 (1955), there can be little question but that imposition of liability without regard to the individual officer's defenses of good faith and reasonable belief would be a substantial enough departure from general principles of *respondeat superior* [13] and would impose a potentially burdensome enough impact on the federal treasury that it should be supported by a clear expression of legislative intent in either the statute itself or in the accompanying legislative history. *Cf. Laird v. Nelms, supra*, 406 U.S. at 802, 92 S.Ct. 1899; *Feres v. United States*, 340 U.S. 135, 146, 71 S.Ct. 153, 95 L.Ed. 152 (1950). Because we find no clear statement of a legislative policy to expand the government's vicarious liability beyond the scope of its agents' direct liability, this rule of construction requires that we reverse the decision of the district court and remand this case in order to allow the government to produce evidence of its agents' good faith and reasonable belief in the legality of their conduct. [14]

*REVERSED AND REMANDED.*

BUTZNER, Circuit Judge, dissenting:

I dissent primarily for the reasons stated in the opinion of the district court, *Norton v. Turner*, 427 F.Supp. 138 (E.D.Va.1977), which, in my view, correctly analyzes the legislative history and the scope of the 1974 amendment to the Federal Tort Claims Act, 28 U.S.C. § 2680(h). Consequently, I write briefly only to emphasize the incongruity of allowing the government to escape liability on the basis of the personal immunity of its officers.

The Supreme Court has treated the good faith defense of executive officials, including law enforcement officers, as a qualified immunity. *See Wood v. Strickland*, 420 U.S. 308, 313–22, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975); *Scheuer v. Rhodes*, 416 U.S. 232, 238–249, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *Pierson v. Ray*, 386 U.S. 547, 555–57, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967). [1] Immunity is conferred because of the status of the official, but it does not diminish the tort. W. Prosser, The Law of Torts, ch. 26 at 970 (4th ed. 1971). The Chief Justice succinct-

---

**13.** As the district court itself noted, employers are generally entitled under traditional principles of *respondeat superior* to assert all defenses available to their employees. Restatement (2d), Agency, § 219 Comment c (1958); *Norton v. Turner, supra*, 427 F.Supp. at 147.

**14.** For an interesting proposal that would achieve legislatively the result reached by the court below, *see* J. Newman, Suing the Lawbreakers: Proposals to Strengthen the Section 1983 Damage Remedy for Law Enforcers' Misconduct, 87 Yale L.J. 447 (1978). Judge Newman proposes that 42 U.S.C. § 1983 be amended to impose vicarious liability on every employing department of government—federal, state or local—for the constitutional torts of its employees. "[T]he imposition of liability upon the wrongdoer's employer would make it entirely appropriate to eliminate . . ." those defenses available to the wrongdoer himself. *Id.* at 459.

**1.** Other authorities refer to police officers' pleas of good faith and reasonable belief in the legality of their conduct as a simple defense or

as a privilege. *See, e. g., Bivens v. Six Unknown Named Agents, etc.*, 456 F.2d 1339 (2d Cir. 1972) (defense); Restatement (Second) of Torts §§ 10, 121(b) (privilege). *See generally, Norton v. Turner*, 427 F.Supp. 138, 147 n.9 (E.D.Va.1977). Under these theories officers are considered to have done no wrong. Pressing for the acceptance of this nomenclature the government contends that it is not vicariously liable.

Of course, I prefer to follow the Supreme Court's analysis which recognizes that the defense is a true immunity. That is to say, even though the officer has erred, the public interest in assuring the discharge of his duties grants him a qualified or absolute immunity as the case may be. Of the three theories—simple defense, privilege, and immunity—the most realistic concept is immunity. *See Stump v. Sparkman*, 435 U.S. 349, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978) (absolute immunity); *Scheuer v. Rhodes*, 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974) (qualified immunity).

ly explained these concepts in *Scheuer v. Rhodes, supra*, 416 U.S. at 241–42, 94 S.Ct. at 1689:

> Public officials, whether governors, mayors or *police*, legislators or judges, who fail to make decisions when they are needed or who do not act to implement decisions when they are made do not fully and faithfully perform the duties of their offices. Implicit in the idea that officials have some immunity—absolute or qualified—for their acts is a recognition that they may err. The concept of immunity assumes this and goes on to assume that it is better to risk some error and possible injury from such error than not to decide or act at all. [emphasis added]

The government never previously relied on the immunity of its officers as a defense. It asserted its own sovereign immunity. But the 1974 amendment to the Act unequivocally waived sovereign immunity for specified torts committed by law enforcement officers. The Act does not condition the waiver of sovereign immunity on the absence of the officers' personal immunity. No principle of common law, no statute or decisional precedent, either federal or state, authorizes the government to substitute its officers' personal immunity for the sovereign immunity which an Act of Congress waives.

Indeed, the common law ordinarily does not permit an employer to escape liability because his employee is personally immune. The rule is stated as follows in Restatement (Second) of Agency § 217(b)(ii) (1958):

> (b) The principal has no defense because of the fact that:
>
> .      .      .      .      .
>
> (ii) the agent had an immunity from civil liability as to the act.

The acceptance of this principle in Virginia, where the illegal search occurred, is illus-

trated by *Worrell v. Worrell*, 174 Va. 11, 25, 4 S.E.2d 343, 348 (1939).[2]

There is a fundamental difference between the qualified immunity granted a public official and sovereign immunity. A public official is afforded protection from personal liability because the public interest requires that he be free to discharge his duties in good faith without fear of being impoverished if he errs. *See Scheuer v. Rhodes, supra*, 416 U.S. at 241–42, 94 S.Ct. 1683. On the other hand, sovereign immunity is based on the recognition "that there can be no legal right as against the authority that makes the law on which the right depends." *Kawananakoa v. Polyblank*, 205 U.S. 349, 353, 27 S.Ct. 526, 527, 51 L.Ed. 834 (1907); *Cohens v. Virginia*, 19 U.S. (6 Wheat.) 264, 411–12, 5 L.Ed. 257 (1821). The basic flaw in the government's position is the premise that these distinctive immunities are interchangeable. They are not. By amending the Act in 1974, Congress preserved the qualified immunity of federal law enforcement officers; at the same time, it allocated to the public at large the risk of a mistake, instead of visiting the cost solely on the innocent victim of the error.

Because the judgment of the district court conformed unexceptionably to the 1974 amendment and the congressional intent that prompted this reform, I respectfully dissent.

---

**2.** In *Worrell*, the court cited with approval cases from other states permitting recovery against employers of family members based on the members' negligence as employees even though intra-family immunities protected the employees from liability to their families.