Robert L. ARNSBERG, Plaintiff,

v.

UNITED STATES of America, Defendant.

Civ. No. 81–936–RE.

United States District Court, D. Oregon.

Aug. 11, 1982.

Stephen R. Frank, Tooze, Kerr, Marshall & Shenker, Portland, Or., for plaintiff.

Charles H. Turner, U.S. Atty., Portland, Or., for defendant.

## OPINION

REDDEN, Judge:

Robert L. Arnsberg brought this action against the federal government and certain named officers of the Internal Revenue Service (IRS) for false arrest and other related torts. The case is now before the court on cross motions for summary judgment. A review of the facts will be helpful.

FACTS

In late 1979 and early 1980, the IRS was conducting an investigation of certain wagering activities in the Portland area. Special Agent Maney and Special Agent Weiler were the principal agents in charge. Records seized from one of the targets of the investigation included a number of names, including that of the plaintiff Arnsberg. Agent Weiler called Arnsberg seeking an interview, but Arnsberg declined the invitation. Weiler informed Arnsberg that if he did not talk voluntarily, a grand jury subpoena would issue, requiring his appearance and testimony. Arnsberg declined to cooperate until such a subpoena was served upon him.

On January 25, 1980 and again February 11, 1980, agents Maney and Weiler sought to serve Arnsberg at one of the two businesses managed by Arnsberg in the Portland area. He was not present and the agents left copies of the subpoena and a telephone number for Arnsberg to call. Arnsberg did not respond. The agents attempted to serve Arnsberg at his father's residence and also called his family and friends. Arnsberg was not found, and efforts to serve him were unsuccessful. On

February 26, 1980, the investigating grand jury met but Arnsberg had not been served.

On February 27, 1980 agents Maney and Weiler met with an Assistant United States Attorney (AUSA) to discuss the situation and the difficulties encountered in serving Arnsberg. They decided to arrest Arnsberg. The two agents prepared affidavits recounting the above facts and the fact that Arnsberg had not appeared before the grand jury. Although Arnsberg was under no duty to appear, since he had not been served, the AUSA prepared an application for an arrest warrant for him for "failure to appear before the Grand Jury." The application, together with the agents' affidavits, were presented to a Magistrate who signed the warrant.

The AUSA advised the agents that an arrest of Arnsberg would be legal. Maney called Arnsberg and told him that he was "causing trouble," and that he wanted to meet with him. Arnsberg agreed to wait for Maney, and did so. There was apparently no mention of the arrest warrant and when the agents arrived, they arrested Arnsberg. He was handcuffed and taken from his place of business in the view of employees and customers. He was released on his own recognizance, upon his agreement to appear before the grand jury and testify. Soon thereafter, Arnsberg moved to quash the warrant for his arrest. The motion to quash was granted by minute order.

Arnsberg then brought this suit against the United States and the two IRS agents for false arrest and invasion of privacy.

LAW

Private citizens whose constitutional rights are infringed by governmental wrongdoing have two causes of action available to them. They may sue individual government officers under the *Bivens* doctrine, *see Bivens v. Six Unknown-Named Agents,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), or they may sue the United States in tort, as provided in the Federal Tort Claims Act (FTCA), 28 U.S.C. § 1346(b) and § 2671 *et seq.* These are "parallel, complementary causes of action."

*Carlson v. Green,* 446 U.S. 14, 100 S.Ct. 1468, 1472, 64 L.Ed.2d 15 (1980). A plaintiff may proceed under both theories. *Id.*

The differences between the two causes of action will affect a plaintiff's choice of theories. A *Bivens* claim against individual government officers entitles the plaintiff to jury trial, and punitive damages are available. *Id.* at 1473–4. However, individual federal officers may not have the personal assets to satisfy a judgment. Moreover, defendants in a *Bivens* action have a qualified immunity defense available, based upon their good faith belief in the legality of their actions. *Dellums v. Powell,* 566 F.2d 167 (D.C.Cir.1977); *Butz v. Economou,* 438 U.S. 478, 500, 98 S.Ct. 2894, 2907, 57 L.Ed.2d 895 (1978).

Under the FTCA, a plaintiff has no right to a jury trial, and there can be no claim to punitive damages. I conclude, however, that the good faith defense available to individual government officers is not available to the government itself. *Townsend v. Carmel,* 494 F.Supp. 30, 36–7 (D.C. D.C.1980). This result is dictated by the legislative history of 28 U.S.C. 2680(h), a 1974 amendment to the Federal Tort Claims Act, *see* Boger, Gitenstein and Verkuil, The Federal Torts Claims Act Intentional Torts Amendment: An Interpretive Analysis, 54 N.C.L.Rev. 497, 505–17 (1976).

The Fourth Circuit Court of Appeals has reached a contrary result in *Norton v. United States,* 581 F.2d 390 (4th Cir.1978). There the majority reversed the district court and found that the good faith defenses were available to the government. 581 F.2d 397. The *Norton* court found the legislative history inconclusive, and not entitled to controlling weight. 581 F.2d 396. The *Norton* decision has been sharply criticized. *See* 47 Geo.Wash.L.Rev. 651 (1979). The Fifth Circuit has questioned the continued vitality of certain aspects of *Norton* in light of the Supreme Court's intervening decision in *Carlson v. Green, supra. Brown v. United States,* 653 F.2d 196, 201 n. 4 (5th Cir.1981). The D.C. Circuit has also referred to criticism of *Norton* in *Sami v.*

*United States,* 617 F.2d 755, 767 n. 21 (D.C. Cir.1979). *Townsend v. Carmel, supra,* reaches a result contrary to that in *Norton,* without any citation to *Norton.* It appears that only the Fourth Circuit now follows *Norton. See, e.g., Picariello v. Fenton,* 491 F.Supp. 1026, 1040–1042 (M.D.Penn.1980) (Norton found unpersuasive).

There is no Ninth Circuit case but I believe that this Circuit will adopt the approach represented by the *Townsend* decision. Congress clearly intended to protect *individuals* by providing a defense when they acted in good faith, but did not intend to deny all compensation to aggrieved parties in such circumstances. Congress envisioned the possibility of governmental compensation regardless of the personal liability, or immunity, of the individual government agent. *See Owen v. City of Independence, Missouri,* 445 U.S. 622, 100 S.Ct. 1398, 1415–18, 63 L.Ed.2d 673 (1980) (Examination of legislative intent and "considerations of public policy" compel ruling that municipalities may not assert the good faith defenses of their officers in suits under § 1983); *Butz v. Economou, supra,* 438 U.S. at 503–504, 98 S.Ct. at 2909–2910 (In absence of congressional direction to the contrary, federal immunity should be coterminous with corresponding immunities under § 1983). The special circumstances which warrant creation of the qualified personal immunity for agents acting in good faith do not apply to the government under the Federal Torts Claims Act. This appears to be the course the Ninth Circuit would follow, *see Wallace v. Chappell,* 661 F.2d 729, 731 (9th Cir.1981) (Official immunity question "arises only when an individual official is sued for damages").

Another notable feature of the FTCA is that it provides for federal jurisdiction and waiver of sovereign immunity, but the underlying cause of action is provided by state law. *Carlson v. Green, supra,* at 1474.

DISCUSSION

The present case was originally filed, under the FTCA, against the federal government and agents Maney and Weiler. Since individuals may not be sued under the FTCA, plaintiff's counsel agreed the two individual agents should be dropped. The plaintiff now seeks to re-join agents Maney and Weiler as defendants on a *Bivens* theory. This does not unfairly prejudice the government, and the motion is granted.

This case, then, involves a *Bivens* claim against agents Maney and Weiler and a claim under the FTCA against the government.

A. *FTCA Claim*

The plaintiff is entitled to partial summary judgment on the issue of liability on the FTCA claim. Although summary judgment is only appropriate where there are no genuine issues of material fact in dispute, *Gaines v. Haughton,* 645 F.2d 761, 769–70 (9th Cir.1981), the parties to this case have agreed that there are no such issues here. The issue then is whether the plaintiff or defendant is "clearly entitled to prevail as a matter of law," *Id.* at 769. I hold that the plaintiff should prevail on the liability issue.

The underlying cause of action in a claim under the FTCA must be provided by state law, *Carlson v. Green, supra,* at 1474; 28 U.S.C. § 1346(b). Oregon recognizes the torts of false arrest, false imprisonment and intrusion on the right of privacy. *McNeff v. Heider,* 216 Or. 583, 337 P.2d 819 and 340 P.2d 180 (1958); *Napier v. Sheridan,* 24 Or.App. 761, 547 P.2d 1399 (1976); *McLain v. Boise Cascade,* 271 Or. 549, 533 P.2d 343 (1975). Since the damages would be the same for any of these torts, and since I find that the federal government is liable for false arrest and false imprisonment, I need not decide whether these facts constitute the tort of invasion of privacy, *see* Prosser, *Privacy,* 48 Cal.L.Rev. 383 (1960).

Under Oregon law, an actor may be liable for false arrest and false imprisonment, regardless of whether actual malice existed and regardless of whether there was "probable cause." *McNeff v. Heider, supra,* 216 Or. at 588, 337 P.2d 819; *Napier v. Sheridan, supra,* 24 Or.App. at 765, 547 P.2d 1399. Actual malice in such tort actions is

only an issue where punitive damages are sought, *McNeff*, 216 Or. at 589, 337 P.2d 819. Since punitives are not available under the FTCA, 28 U.S.C. § 2674, malice is not an issue here. The plaintiff must, however, prove that the arrest or imprisonment was "false," i.e., unlawful because made without lawful authority.

■ It is axiomatic that the plaintiff could not *lawfully* be arrested for "failure to appear before the grand jury" when he was under no duty to appear. He had not been subpoenaed. The circumstances of this case indicate that Arnsberg was arrested for not being available on the two occasions when the agents sought to serve him. Under such circumstances the arrest was false and unlawful.

Although the warrant for Arnsberg's arrest charges "failure to appear before the grand jury," it also refers to 18 U.S.C. § 3149, which is the "material witness" release provision. This provision has been interpreted by the Ninth Circuit in *Bacon v. United States,* 449 F.2d 933 (1971). Under *Bacon,* an arrest warrant may issue for a material witness when there is probable cause to believe that the testimony of the witness is material *and* "that it may become impracticable to secure his presence by subpoena." *Bacon* at 943. This latter requirement is designed to allow the government to seek to secure the testimony of a witness who is likely to flee or "go underground." *Id.* at 944. There must be a *sufficient* showing of this likelihood, based upon facts and not the conclusory allegations of investigating officers. *Id.*

No such showing was made here. Arnsberg owned and managed two grocery stores and there was no evidence that he would flee these community ties. He had never expressed such an intent, and when the agents called him and asked to speak to him, he waited for them. The agents then proceeded to arrest and handcuff the plaintiff, rather than serve him with a subpoena. As the Ninth Circuit noted when it quashed the material witness warrant in *Bacon,*

> Such a situation differs greatly from that in which Bacon would have found herself had she been served with a subpoena. She would then have had an opportunity to reflect on her obligation to obey the process, free from the fear of imminent arrest by pursuing officers. This opportunity is granted to most witnesses, and the showing in the present case does not justify denying Bacon the same opportunity.

449 F.2d 945.

In the present case the warrant charged Arnsberg with "failure to appear before the grand jury" and it is doubtful whether it could be upheld on any other basis. Although "18 U.S.C. § 3149" is typed in near the bottom of the arrest warrant, there is no likelihood that Arnsberg would have fled. Rather, the warrant charges "failure to appear," as if Arnsberg had already been subpoenaed and had failed to appear. The facts of this case show that Arnsberg was arrested because he was not present to be subpoenaed when the agents came to his premises on two occasions, and because he did not agree to testify without a subpoena. This is not a crime, and an arrest for such is not lawful. *Napier v. Sheridan, supra,* 24 Or.App. at 765, 547 P.2d 1399.[1]

The plaintiff is entitled to partial summary judgment on the issue of liability on his FTCA claim.

### B. *Bivens Claim*

■ Arnsberg also pursues a *Bivens* claim against Maney and Weiler, the individual IRS agents. They have filed affidavits demonstrating their "good faith" defense. The affidavits swear that the agents relied upon the legal advice of the AUSA in seeking an arrest warrant for Arnsberg and

---

1. Although the plaintiff seeks to establish the unlawfulness of the arrest by the use of offensive collateral estoppel, based upon the order quashing the arrest warrant, the government objects that the basis of that ruling is not clear. Since *Bacon* was the only authority cited to the judge, I think the government's argument is not well-taken. In any event, I hold that the arrest was unlawful and false, without reference to any collateral effect of the judge's order.

in arresting him.[2] I find that this does establish that the agents' actions were the result of a "good faith" belief that their actions were legal. There is evidence in the record from which a jury could conclude that the agents were irritated with Arnsberg for "causing trouble" by not agreeing to testify without service of a subpoena, but the agents did seek the advice of an ASUA. They followed that advice.

*Smiddy v. Varney,* 665 F.2d 261 (9th Cir. 1981) holds that police officers have a qualified immunity if they reasonably believe that their actions are constitutional and that their arrests are supported by probable cause. 665 F.2d 266. Law enforcement officers should be able to rely on their good faith belief that their actions are legal. *Smiddy,* however, contains a qualification that if the police officers act "maliciously or with reckless disregard for the rights of an arrested person," there is no immunity. *Id.* at 267. I hold that the agents did not *recklessly* disregard Arnsberg's rights or *act* maliciously. The agents properly brought the situation to the attention of an AUSA and then followed his advice. It was not "reckless" to do so, and any ill will the agents may have borne did not impact their *actions,* since they were under the direction of the AUSA. As the Ninth Circuit indicated in *Smiddy:*

> A police officer's lot already is unfortunate because it is he who often is the only actor in the chain of decisions leading to prosecution who is subject to 1983 liability. We need not make it more unfortunate by holding the officer liable for damage that is the result of the intervening fault of others in the chain. The existence of the possibility of absolute liability on the part of the municipality or governmental unit further underscores the justice of limiting the liability of the police officers. *See* Comment, *Strict Liability Under Section 1983 for Municipal Deprivations of Federal Rights?: Owen v.*

*City of Independence,* 55 St. John's L.Rev. 153 (1980).

665 F.2d at 267.

I therefore hold that defendants Maney and Weiler are entitled to summary judgment on plaintiff's *Bivens* claim against them.

SUMMARY

The plaintiff is entitled to partial summary judgment on liability on the FTCA claim against the United States. A hearing will be scheduled for the court to assess damages.

Defendants Maney and Weiler are entitled to summary judgment on the plaintiff's *Bivens* claim.

---

**2.** The Assistant U.S. Attorney has an absolute immunity in civil suits arising out of his official duties as a prosecutor. *Imbler v. Pachtman,*

424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976); *Brawer v. Horowitz,* 535 F.2d 830 (3d Cir.1976).