Argued and submitted March 2, affirmed May 25, 1983

O'BRIEN,
*Respondent,*
*v.*
EUGENE CHEMICAL EXPORTS, INC. et al,
*Appellants.*

O'BRIEN,
*Respondent,*
*v.*
EUGENE CHEMICAL EXPORTS, INC. et al,
*Appellants.*

(80-2471, CA A25193; 80-2512, CA A25194)
(Cases Consolidated)

664 P2d 1106

Norman K. Winslow, Salem, argued the cause and filed the briefs for appellants.

Larry W. Stuber, Corvallis, argued the cause for respondents. With him on the brief was Ringo, Walton & Eves, P.C., Corvallis.

Before Joseph, Chief Judge, and Warden and Young, Judges.

JOSEPH, C. J.

## JOSEPH, C. J.

Plaintiffs brought separate actions for false arrest. The cases were tried together. A jury awarded $6,000 general damages and $7,000 punitives to Mrs. O'Brien and $3,000 general and $3,500 punitive damages to Eugene, her son. Defendants appeal.

■ Defendants first argue that the trial court erred in denying their motion for a directed verdict, because the evidence showed that plaintiffs were guilty of criminal trespass "as a matter of law" and that defendant Retton had probable cause to arrest them. Proof that the arrest was lawful is a defense in a false arrest action. *Brackhahn v. Nordling,* 269 Or 667, 674, 526 P2d 221 (1974). Whether Retton's arrest of plaintiffs was lawful is controlled by ORS 133.225(1), which provides:

> "A private person may arrest another person for any crime committed in his presence if he has probable cause to believe the arrested person committed the crime."

The statute does *not* say that one citizen can lawfully arrest another merely on probable cause to believe that the other has committed a crime. *But see Napier v. Sheridan,* 29 Or App 761, 547 P2d 1399 (1976), which was decided under prior law. Whether a crime was in fact committed is also an issue in an action for false arrest.

In reviewing denial of a motion for a directed verdict, the evidence is viewed in the light most favorable to the party opposing the motion. *James v. Carnation Co.,* 278 Or 65, 562 P2d 1192 (1977). Only when but one inference can be drawn from the facts and that inference supports the moving party's position should the motion be granted. *James v. Carnation Co., supra,* 278 Or at 69.

On the afternoon of August 21, 1980, plaintiffs and a friend, Fletcher, drove onto the property of Eugene Chemical to pick blackberries. Eugene Chemical makes products primarily from farm animal carcasses. There are gates leading to the plant, but they are usually left open to allow farmers to deliver their dead animals. Plaintiffs were aware of "No Trespassing" signs posted on the property and were also aware that the property belonged to Eugene Chemical. While they were in the brambles picking berries, Retton drove up and confronted

Eugene, asking him "who the hell" gave him permission to be on the property. When Eugene identified himself, Retton called him a "f-----g freeloader."[1] Mrs. O'Brien then came out of the brambles, and Retton also asked her who had given permission to be on the property. In the ensuing verbal confrontation the parties exchanged vituperative expressions, some of them quite vulgar. Retton summoned a deputy sheriff and effected a citizen's arrest of plaintiffs, but not Fletcher. Plaintiffs were driven home so that Mrs. O'Brien could, in the words of the deputy sheriff, "change her attirement" and were then taken to the county jail. Mrs. O'Brien was booked; both plaintiffs were released about an hour and a half later when Mr. O'Brien put up $100 bail. Retton never signed a formal complaint, and the district attorney did not pursue criminal proceedings, because he felt that would have been an undue hardship, given the minor offense charged.

In 1966, Mrs. O'Brien and her husband had lived on the property in a trailer while he worked for the company. The then owners allowed her to hunt and pick blackberries on the property and acquiesced in her doing so even after she and her family moved off the property about a year later. She had picked blackberries on the property nearly every summer since then (sometimes with Retton's children), and nobody had ever told her that she could not. She thought that she had standing permission to pick blackberries there and was not aware that the company changed ownership in 1975, at which time Retton became manager. Several months before the incident, Eugene sought and was denied Retton's permission to fire his gun on the property. Another witness testified that he had encountered Retton twice while picking blackberries on the property and that Retton had allowed him to stay. He said that, before those encounters, he had thought that the property belonged to the county.

One commits criminal trespass in the second degree if he "enters or remains unlawfully in or upon premises." ORS 164.245(1). ORS 164.205(3)(a) provides:

" 'Enter or remain unlawfully' means:

"To enter or remain in or upon premises when the premises, at the time of such entry or remaining, are not open to the

---

[1] Mr. O'Brien, Eugene's father, was receiving Workers' Compensation permanent total disability payments for a back injury he had received while working at the plant.

public or when the entrant is not otherwise licensed or privileged to do so."

Whether premises are "open to the public" is determined by ORS 164.205(4):

" 'Open to the public' means premises which by their physical nature, function, custom, usage, notice or lack thereof or other circumstances at the time would cause a reasonable person to believe that no permission to enter or remain is required."

The issues at trial were whether the property was open to the public, whether plaintiffs were in fact privileged to enter the property and, if not, whether they believed they were.[2] Those were factual questions, and there was evidence supporting plaintiffs' position with respect to each. It was proper to deny defendants' motion for a directed verdict.[3]

Defendants argue that the trial court erred in giving the following instructions:

"Now, in this case certain facts are in dispute and one of the set of facts which would constitute probable cause, whereas a different set of facts would not constitute probable cause, so I'm going to read that over to you to make it just exactly right. In this case the facts are in dispute. And one of the facts would constitute probable cause, whereas a different set of facts would not constitute probable cause. It is up to you to decide which set of facts is true.

"I instruct you that if the following facts are true, there was no probable cause to arrest the plaintiffs:

"(a)  That the premises were open to the public, or

"(b)  That the plaintiffs had prior permission from the owners, owner or owners, or person in charge of the premises to pick blackberries."

Defendants argue that the judge should not have instructed the jury that it was allowed to find that the premises were open to the public, because the property was posted with "No Trespassing" signs. Defendants analogize the definition of "open to the public" in ORS 164.205 to a New York statute

---

[2] Unless specifically provided otherwise, a person is not guilty of a crime unless he acts with a culpable mental state. *State v. Eyerly,* 37 Or App 399, 587 P2d 1039 (1978); ORS 161.025(1)(d); ORS 161.085-.095.

[3] Because there was a jury question whether a crime had been committed, the motion for a directed verdict was properly denied. *See* n 5, *infra.*

from which they claim the Oregon statute is "taken." However, the significantly different language of the two statutes[4] clearly shows that the Oregon statute was not "taken" from the New York statute. Moreover, although the fact that there were "No Trespassing" signs on the property is *some* evidence that the property was not open to the public, the statute says that other evidence may show that it was — e.g., the property's physical nature, custom, usage and "other circumstances." The instruction was not error on the ground urged by defendants.[5]

■ Defendants next argue that the issue of punitive damages should not have been submitted to the jury. They first claim that, under *Wheeler v. Green,* 286 Or 99, 593 P2d 777 (1979), where the court held that an award of punitive damages in a defamation case is unconstitutional, an award of punitive damages in this case is similarly defective. They claim that because the *Wheeler* case and this case both involve damages for injury to reputation, the punitive damages issue should be resolved similarly. However, the basis for the denial of punitive damages in *Wheeler* was not that the case involved injury to reputation,[6] but that it involved speech. The court in *Wheeler* reasoned that the threat of punitive damages in a defamation case could easily inhibit the exercise of free expression. 286 Or at 119.

Defendants argue that speech is involved in this case, because Retton's abusive language prompted the false arrest

---

[4] The New York Statute provides:

"A person who enters or remains upon unimproved and apparently unused land, which is neither fenced nor otherwise enclosed in a manner designed to exclude intruders, does so with license and privilege unless notice against trespass is personally communicated to him by the owner of such land or other authorized person, or unless notice is given by posting in a conspicuous manner." N.Y. Penal Law § 140.00(5) (McKinney 1975).

[5] We note that the instruction is not a proper statement of the law. Whether the property was open to the public or whether plaintiffs had permission to be on the property, not whether Retton had probable cause to arrest them, determines whether criminal trespass was committed. Nevertheless, the giving of the instruction was harmless error. If the jury followed the instruction, which we assume it did, it found that the premises were open to the public or that plaintiffs were privileged to enter it, either of which preclude plaintiffs' guilt for criminal trespass.

[6] Indeed, the court pointed out that Article I, § 10 of the Oregon Constitution guarantees every person a remedy "by due course of law for injury done him in his * * * reputation." *Wheeler v. Green, supra,* 286 Or at 118.

actions. Whatever motives plaintiffs may have had for seeking legal redress are irrelevant. The alleged tort in this case rested on the falsity of the arrests and not on Retton's abusive language. *See Hall v. The May Dept. Store,* 292 Or 131, 147, 637 P2d 126 (1981).

■ Defendants also claim that there was insufficient evidence to support an award of punitive damages. However, the fact that Retton verbally abused plaintiffs and arrested them and not their companion or others who had picked berries on the property suggests that the arrest was malicious or arbitrary. Plaintiffs were the wife and son of a man whom Retton admitted at trial he regarded as a "freeloader." The language in *Vandermeer v. Pacific N.W. Develop.,* 274 Or 221, 228-229, 545 P2d 868 (1976), where the punitive damages question was left to the jury, is appropriate here:

> "There was evidence from which the jury could find that defendant's representative undertook in a particularly arbitrary manner, while extremely angry and with insufficient or no prior notice of any change in the rules, to use the severe sanction of arrest and jail to immediately enforce defendant's asserted rights in what constituted a legitimate dispute of no great or immediate consequence."

Under *Vandermeer,* it was proper to submit the question of punitive damages to the jury. *See also Stroud v. Denny's Restaurant,* 271 Or 430, 532 P2d 790 (1975).

■ Defendants argue finally that the court erred in refusing to allow cross-examination of Eugene with respect to his "bad reputation." Defendants wanted to show that Eugene had hit a boy at school with a pop bottle, had broken another boy's nose and had had a fight with a school janitor and that Retton, at the time of the arrest, was aware of Eugene's propensity for violence. They claim that evidence of the bad reputation of the plaintiff in a false arrest action is relevant to the issue of whether the defendant had reasonable grounds and acted in good faith in effecting the arrest. *See Wigmore on Evidence* § 258 (3rd ed.). Although such evidence may be probative of whether the defendant had probable cause to believe a crime had been committed by the plaintiff, it is so by virtue of the fact that the plaintiff has a bad reputation for conduct *similar* to that for which he was arrested. Here, evidence of Eugene's

propensity for violence is irrelevant to whether Retton had probable cause to believe that he was trespassing. The evidence was inadmissible.

Affirmed.