**Robert L. ARNSBERG, Plaintiff-Appellee and Cross-Appellant;**

v.

**UNITED STATES of America, Defendant-Appellant and Cross-Appellee.**

**Nos. CA 83–3590, CA 83–3620.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Jan. 5, 1984.

Decided July 31, 1984.

Decision Withdrawn and Rehearing Granted Dec. 3, 1984.

Decided April 9, 1985.

Stephen R. Frank, Tooze, Kerr, Marshall & Shenker, Portland, Or., for plaintiff-appellee and cross-appellant.

Judith D. Kobbervig, Asst. U.S. Atty., Portland, Or., for defendant-appellant and cross-appellee.

Before KILKENNY, WALLACE and CANBY, Circuit Judges.

CANBY, Circuit Judge:

Robert Arnsberg filed an action against the United States under the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 1346(b), 2401(b), 2671–80 (1982), and the fourth amendment, alleging that United States agents had arrested and imprisoned him in violation of Oregon tort law and the United States Constitution. He joined the arresting officers as defendants in the action under the constitutional tort theory of *Bivens v. Six Unknown Named Agents*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). The district court granted summary judgment in favor of Arnsberg on one of his FTCA claims, and summary judgment in favor of the arresting officers on the *Bivens* claim. 549 F.Supp. 55 (D.Or.1982). Both sides appeal.

We affirm in part, reverse in part, and remand. Regarding Arnsberg's claims against the United States, we hold that the United States' waiver of sovereign immunity in false imprisonment actions extends only to the actions of its law enforcement officials; that the United States is not liable under the FTCA when the arresting officers did not commit the state-law tort of false imprisonment; and that the United States is not liable under the fourth amendment for unreasonable seizures committed by its agents. Regarding Arnsberg's claim against the arresting officers, we hold that the defendant officers acted constitutionally when they executed a warrant which, although invalid and facially defective, was not obviously either. We also hold that the defendant officers were immune from *Bivens* liability when they reasonably relied on the advice of counsel that the arrest was constitutional, and on the issuance of a warrant by a magistrate, even though the arrest was later found to be unconstitutional.

## BACKGROUND

### I. Facts

In 1979 and early 1980, the Internal Revenue Service was conducting an investigation into gambling affairs in the Portland area. In connection with the investigation, the IRS wished to have Arnsberg, whose name had cropped up on certain records seized by the IRS, testify before a federal grand jury. Arnsberg, however, refused to testify voluntarily, telling IRS agents Weiler and Maney, who were conducting the investigation, that he would appear before the grand jury only after being personally served with a subpoena.

On December 27, 1979, a subpoena was issued which called for Arnsberg's appearance before the grand jury on February 26, 1980. Agents Weiler and Maney made several attempts to serve the subpoena on Arnsberg. Arnsberg managed two grocery stores in Portland, Stan's Supermarket and the Hoot Owl Market. On January 25, 1980, the agents visited Stan's Supermarket, found Arnsberg not there, and left a copy of the subpoena with one of his employees. On February 11, the agents visited the Hoot Owl, again found Arnsberg not there, and again left a copy of the subpoena with an employee. The agents made several attempts to serve Arnsberg at his father's residence, where Arnsberg resided on a part-time basis. They also called several of Arnsberg's friends and relatives in attempts to locate him. All of the agents' efforts proved unavailing, however. February 26, the date of Arnsberg's scheduled appearance, passed without the

personal service required by Rule 17(d), Fed.R.Crim.P.

After discussing the matter between themselves, agents Weiler and Maney decided to consult the United States Attorney's office. Agent Maney reported the difficulties he and Weiler were encountering to assistant United States Attorney Robinson. Robinson believed that the facts justified the issuance of a warrant pursuant to 18 U.S.C. § 3149 (1982), which authorizes the arrest of material witnesses whose presence cannot practicably be secured by subpoena, *see Bacon v. United States*, 449 F.2d 933, 936–41 (9th Cir.1971). Accordingly, armed with an affidavit from Maney, Robinson requested that Magistrate Leavy issue a warrant calling for Arnsberg's arrest as a material witness. On February 27 the magistrate complied. Magistrate Leavy entered an order which found the elements necessary for a material witness arrest to be satisfied and directed the issuance of a warrant. The warrant itself, however, stated that the arrest was to cause Arnsberg to answer the charge of "Failure to Appear before the Federal Grand Jury." The statute stated to have been violated was "Title 18, Section 3149," the material witness arrest warrant provision.[1]

Later the same day, February 27, agents Maney and Weiler managed to reach Arnsberg by telephone at the Hoot Owl Market. They then went to the market and arrested him.

On March 13, 1980, Arnsberg filed a motion to quash the warrant of arrest. The district court granted Arnsberg's motion on March 31, but without entering findings of fact or conclusions of law. The government made no attempt to appeal the court's ruling.

## II. Procedural History

After properly exhausting his administrative remedies, *see* 28 U.S.C. §§ 2401(b),

2675(a) (1982), Arnsberg filed a suit against the United States under the FTCA for false imprisonment. He included a constitutional tort claim based on *Bivens v. Six Unknown Named Agents*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), against the agents Weiler and Maney. Finally, he claimed damages from the United States directly under the fourth amendment, alleging that his arrest was an unreasonable seizure.

The parties filed cross-motions for summary judgment. The district court ruled for Arnsberg on the false imprisonment claim under the FTCA, but against him on his fourth amendment claim against the government and his *Bivens* claim against the agents. 549 F.Supp. 55 (D.Or.1982). After a trial on the issue of harm, the court awarded Arnsberg damages of $6,650 against the United States. Both sides appeal.

## ANALYSIS

### I. *Standard of Review*

■ The district court decided the case on cross-motions for summary judgment. Such action is proper only if there are no genuine issues of material fact in dispute and the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Tovar v. Billmeyer*, 721 F.2d 1260, 1263 (9th Cir. 1983), *cert. denied*, —— U.S. ——, 105 S.Ct. 223, 83 L.Ed.2d 152 (1984). In reviewing a summary judgment, we view the evidence in the manner most favorable to the losing party. *Id.*

### II. *Arnsberg's Claims against the United States*

Arnsberg presented two principal theories to justify recovery from the United States. First, he argued that the govern-

---

1. The arrest warrant, which followed a standardized form, provided:

 You are hereby commanded to arrest Larry Arnsberg, and bring him forthwith before the nearest available United States Magistrate to answer a complaint charging him with Failure

 to Appear before the Federal Grand Jury, in violation of U.S.C. Title *18*, Section *3149*.

 The underscored words show where blank spaces occurred in the standardized form and how Magistrate Leavy completed them.

ment's actions constituted the state-law tort of false imprisonment, thereby entitling him to recovery under the FTCA. Second, he argued that because his arrest was an unreasonable seizure under the fourth amendment, he was entitled to both compensatory and punitive damages from the United States directly under the fourth amendment. The district court ruled in Arnsberg's favor on his first theory, but rejected his second one.[2] Our disposition of the issues makes it necessary to address both of Arnsberg's claims.

## A. The United States' Liability under the FTCA for False Imprisonment

The district court granted Arnsberg summary judgment on his false imprisonment claim through a two-step analysis. The central controversy between Arnsberg and the United States is over the reason for Arnsberg's arrest. Arnsberg contends that he was arrested for failure to appear before the grand jury, while the government argues Arnsberg was arrested for being a material witness whose presence could not practically be secured by subpoena. In the first step of its reasoning, the district court concluded that the warrant was invalid regardless of whose version of the arrest is accepted. If Arnsberg's theory were correct, then of course the warrant would be invalid. Because Arnsberg had not been personally served, he had no obligation to appear before the grand jury and therefore could not lawfully be arrested for failing to do so. On the other hand, the warrant would be invalid even under the government's theory. In the district court's view, the difficulties encountered by agents Weiler and Maney in attempting to serve Arnsberg did not establish probable cause for believing that it would be impracticable to secure Arnsberg's presence by subpoena. *See Bacon v. United States*, 449 F.2d 933, 943 (9th Cir.1971).

In the second step of its analysis, the district court identified what it regarded as the controlling state and federal legal standards. It determined that a wrongful arrest constitutes the tort of false imprisonment under Oregon law. *See Brackhahn v. Nordling*, 269 Or. 667, 674, 526 P.2d 221, 224 (1974); *McNeff v. Heider*, 216 Or. 583, 588, 337 P.2d 819, 821 (1959). Then, probably as a result of reliance on § 2674 of the FTCA, 28 U.S.C. § 2674 (1982), the court determined that as a matter of federal law the United States is liable whenever the government falsely imprisons someone. Given those legal principles, two conclusions appeared to follow: first, because Arnsberg was arrested pursuant to an invalid warrant, his arrest was wrongful and therefore a false imprisonment under state law; second, because Arnsberg had been falsely imprisoned, the FTCA rendered the United States liable.

 We agree with the first step in the district court's analysis. The government does not contend, and in good faith could not contend, that the warrant would be valid if it were issued for failure to appear before a grand jury. On the other hand, even if the warrant is construed as a material witness arrest warrant, it remains invalid. As the district court recognized, one prerequisite to the issuance of a material witness arrest warrant is probable cause for believing that it would be impracticable to secure the witness's presence by subpoena. *See Bacon v. United States*, 449 F.2d 933, 943 (9th Cir.1971). In this case, that criterion was not met. The facts do not show that Arnsberg was a fugitive or that he would be likely to flee the jurisdiction; rather, they only show a man somewhat obstinately insisting upon his right to refuse to appear before a grand jury until personally served. Those facts

---

**2.** Arnsberg also argued that the FTCA directly incorporates fourth amendment standards. *Compare Norton v. United States*, 581 F.2d 390, 392–93 (4th Cir.) (adopting Arnsberg's incorporation argument), *cert. denied,* 439 U.S. 1003, 99 S.Ct. 613, 58 L.Ed.2d 678 (1978), *with Brown v. United States,* 653 F.2d 196, 199–201 (5th Cir.

1981) (rejecting the argument), *cert. denied,* 456 U.S. 925, 102 S.Ct. 1970, 72 L.Ed.2d 440 (1982). Because the district court decided in favor of Arnsberg under his false imprisonment theory, it had no occasion to reach the merits of Arnsberg's incorporation argument. We decline to address it here. *See also* note 4, *infra.*

are insufficient to provide probable cause for believing that Arnsberg's attendance could not be secured by subpoena.[3]

The government challenges the second step of the district court's analysis on the ground that the court erroneously interpreted state law. The court ruled that Arnsberg's arrest was a false imprisonment under Oregon law because the arrest was effected pursuant to an invalid warrant. However, in the government's view, an arrest can be a false imprisonment only if the arresting officers themselves act tortiously. *See Mundt v. United States*, 611 F.2d 1257 (9th Cir.1980) (under Arizona law, no false imprisonment occurred where court order, not the misconduct of law enforcement officials, caused the plaintiff to be imprisoned beyond his sentence). The government contends, for example, that no false imprisonment action would lie in cases where the arresting officers innocently execute unlawfully issued warrants.

■ We believe that the government reads Oregon tort law too narrowly. In *Higgins v. Redding*, 34 Or.App. 1029, 580 P.2d 580 (1978), a state judge caused the plaintiff's wrongful arrest by issuing a warrant without observing the proper procedures. The court implied that but for the state judge's immunity, both the judge and the state would have been liable in a false imprisonment action, despite the fact that the arresting officers engaged in no wrongdoing. *Id.* at 1033–34, 580 P.2d at 582–83. The case indicates to us that Oregon would probably agree with the district court that any arrest pursuant to an invalid warrant constitutes a wrongful and therefore false imprisonment regardless of the arresting officers' lack of fault.

■ However, we need not finally resolve the state-law issue raised by the government, for we find an independent defect in the district court's analysis. The district court assumed that the general principle of federal liability for state-law torts which underlies the FTCA applies in false imprisonment actions without regard to who causes the imprisonment to be wrongful. That assumption, however, is incorrect. Section 2680(h) of the Act, 28 U.S.C. § 2680(h) (1982), provides that the United States' liability for false imprisonment is limited to the "acts or omissions of *investigative and law enforcement officers*," (emphasis added). Thus as a matter of federal if not state law, the district court should have limited its inquiry to whether the law enforcement officers working on Arnsberg's case, namely agents Weiler and Maney, acted tortiously; it should not have assumed that any arrest and imprisonment which would be regarded as tortious under state law necessarily generates liability for the United States under the FTCA. Under Oregon law as the district court interpreted it, there are many ways in which an arrest and imprisonment can be tortious without a wrongful or tortious act being committed by a law enforcement official. Clearly, for instance, such a situation arises when an arresting officer with no prior involvement in the matter innocently executes a warrant which, although invalid, reasonably appeared lawful to the officer. The FTCA, however, limits the United States' liability to instances where wrongful acts by law enforcement officers cause the unjustified imprisonment.

■ It is true that there is legislative history which runs counter to our interpretation of the FTCA and supports the district court's position. The Senate Report to § 2680(h) states that "the Committee amendment would submit the Government to liability whenever its agents ... injure the public through search and seizures that are conducted ... with warrants issued without probable cause." S.Rep. No. 588, 93d Cong., 2d Sess. 3 (1973), *reprinted in*

---

**3.** Because we agree after a de novo review that the warrant is invalid, we do not have to decide whether collateral estoppel would require us to reach that conclusion. Arnsberg argues, with a good deal of persuasiveness, that the validity of his arrest warrant was finally determined when the district court granted his motion to quash the warrant on March 31, 1980, and the government decided not to attempt an appeal. If the validity of the warrant were finally determined on March 31, then of course collateral estoppel would bar relitigation of the issue in this action.

1974 U.S.Code Cong. & Ad.News 2789, 2791. That excerpt suggests that the United States is to incur liability for all arrests made pursuant to invalid warrants, regardless of who causes the arrest to be wrongful. We decline to accept that reading of the statute on the basis of such a fragmentary indication of congressional intent,[4] however, because it runs counter to the plain words of section 2680(h). By its terms, section 2680(h) limits the liability of the United States to instances where law enforcement officials act tortiously. We accept that limitation as written.[5]

■ Arnsberg next argues that even if the district court had correctly focused on the actions of the arresting officers, it would have granted summary judgment in his favor on the false imprisonment claim. He presents two theories in support of this contention. First, Arnsberg develops an argument from the Oregon law of citizen's arrests. If a private individual had apprehended Arnsberg, either for failure to appear before a grand jury or for being a material witness whose presence could not be secured by subpoena, the individual would be liable for false imprisonment. Under Oregon law, a citizen's arrest is lawful only if a crime has actually been committed. Or.Rev.Stat. § 133.225(1) (1983); *O'Brien v. Eugene Chemical Exports, Inc.*, 63 Or.App. 284, 286, 664 P.2d 1106, 1107 (1983). As we have already determined, however, Arnsberg did nothing criminal for which he could be lawfully apprehended. Using the general principle that the liability of the United States is measured by the liability that private individuals acting similarly would incur, *see* 28 U.S.C. § 2674 (1982), Arnsberg argues that the United States incurred liability for the arrest made by agents Weiler and Maney.

■ The Second Circuit encountered a similar argument in *Caban v. United States*, 728 F.2d 68 (2d Cir.1984), a case involving an allegedly unlawful detention by federal immigration officers. The Sec-

---

**4.** We note that another passage from the same Senate Report has been held not to reflect the meaning of section 2680(h). The Report states that section 2680(h) "make[s] the Government independently liable in damages for the same type of conduct that is alleged to have occurred in *Bivens*.... [H]owever, the Committee's amendment should not be viewed as limited to constitutional tort situations." S.Rep. No. 588, 93d Cong., 2d Sess. 3 (1973), *reprinted in* 1974 U.S.Code Cong. & Ad.News 2789, 2791. That statement suggests that section 2680(h) renders the United States liable not only for state law torts of its law enforcement officers, but for their constitutional torts as well. That expansive interpretation of section 2680(h) has been explicitly rejected, however, by the Fifth Circuit, *see Brown v. United States*, 653 F.2d 196, 199–201 (5th Cir.1981), *cert. denied*, 456 U.S. 925, 102 S.Ct. 1970, 72 L.Ed.2d 440 (1982), and implicitly rejected by the Supreme Court, *see Carlson v. Green*, 446 U.S. 14, 23, 100 S.Ct. 1468, 1474, 64 L.Ed.2d 15 (1980). *But see Norton v. United States*, 581 F.2d 390, 392–93 (4th Cir.), *cert. denied*, 439 U.S. 1003, 99 S.Ct. 613, 58 L.Ed.2d 678 (1978).

**5.** A second argument in support of the district court's reasoning maintains that the magistrate involved in Arnsberg's case should be regarded as an "investigative or law enforcement" official for purposes of § 2680(h). If Magistrate Leavy is an "investigative or law enforcement official," then it would indeed follow that his wrongful authorization of the arrest would bring the arrest within the purview of the FTCA. A somewhat credible argument can be made that Magistrate Leavy is an "investigative or law enforcement official" under § 2680(h). The section provides that " 'investigative or law enforcement officer' means any officer of the United States who is empowered by law to execute searches, to seize evidence, or to make arrests for violations of Federal law." Magistrates, as well as judges, are empowered to make arrests. 18 U.S.C. § 3041 (1982). Therefore, it might be supposed that § 2680(h) encompasses instances of false imprisonment caused by magistrates or judges who make erroneous judgments in issuing warrants.

We can accept the argument that magistrates and judges are "investigative or law enforcement officers" for purposes of § 2680(h) when actually apprehending a suspect. We are confident, however, that Congress intended § 2680(h) to apply only when the federal official acts in his or her investigative or law enforcement capacity. Congress could not, for instance, have intended to submit the United States to liability when an official acting in a private capacity commits a tort of false imprisonment. A judge or magistrate when acting adjudicatively does *not* act in an investigative or law enforcement capacity. It therefore follows that when acting adjudicatively, as was Magistrate Leavy in this case, a judge or magistrate is not within the purview of § 2680(h).

ond Circuit refused to assess the liability of the immigration officers by the liability which a private individual making a citizen's arrest would incur. The court recognized that because the immigration officers have different privileges and duties than do private individuals, a private citizen making a citizen's arrest does not act under the "like circumstances" required by § 2674. 728 F.2d at 73–74. We find the reasoning of *Caban* persuasive. Like the immigration officers in *Caban*, agents Weiler and Maney have law enforcement obligations, such as the duty to execute warrants, which private citizens lack; those obligations make the law of citizen arrests an inappropriate instrument for determining FTCA liability. The proper source for determining the government's liability is not the law of citizen's arrests, but rather the law governing arrests pursuant to warrants.

■ Arnsberg then argues that he is entitled to prevail even under the law governing arrests pursuant to warrants. The arrest warrant issued by the magistrate contained a facial discrepancy. While the warrant verbally described the crime charged as failure to appear before a grand jury, it recited in the statutory section that Arnsberg had violated 18 U.S.C. § 3149, the material witness arrest provision. Arnsberg argues that it is tortious for any officer to execute a warrant containing that sort of facial discrepancy.

We reject Arnsberg's argument for three reasons. First, under facts established by the government and not controverted by Arnsberg for purposes of the cross-motions for summary judgment, the agents acted nearly perfectly. They made diligent attempts to effect personal service; after they encountered difficulties, agent Maney quite properly reported them to an assistant United States Attorney; pursuant to the lawyer's directions, Maney submitted an accurate affidavit to the magistrate. Arnsberg suggests that the affidavit was misleading because, in reciting that Arnsberg did not appear before the grand jury on February 26, 1980, it implied that he had

a duty to do so. We find no such misleading tendency; the affidavit made clear that the agents had not previously served the subpoena on Arnsberg. There are no allegations that the agents used excessive force or improper tactics in executing the subsequently issued warrant. Although we have found no case on point, we do not believe an Oregon court would hold agents who act so close to the letter of their obligations to be tortfeasors.

Second, the discrepancy which Arnsberg relies on is a relatively minor and a relatively technical one. Failure to appear before a grand jury is at the least a close cousin of 18 U.S.C. § 3149, the material witness arrest warrant provision. To a person untrained in the law, "failure to appear" could seem a plausible label for the "offense" of being a material witness whose presence cannot practically be secured by subpoena. It would be an unreasonable allocation of duties, *cf. Baker v. McCollan*, 443 U.S. 137, 145–46, 99 S.Ct. 2689, 2695–96, 61 L.Ed.2d 433 (1979), to impose upon law enforcement officers like Weiler and Maney the obligation of scrutinizing arrest warrants for such minor discrepancies.

■ Our final reason for rejecting Arnsberg's argument is that agents Weiler and Maney acted properly under the general common law. According to the Restatement (Second) of Torts, an arrest is privileged if it is made pursuant to a warrant which is regular in form and which reasonably appears to have been issued by a court with jurisdiction. *See* Restatement (Second) of Torts, §§ 122–24 (1965); *accord* 32 Am.Jur.2d *False Imprisonment* § 81 (1982). The arrest made by agents Weiler and Maney satisfies those criteria. The arrest warrant was "regular in form" because it was signed by the magistrate, identified Arnsberg by name, and contained entries in the sections calling for a description of the offense and a statutory situation, *see* Fed.R.Crim.P. 4(c)(1). The arrest warrant was issued by a court of competent jurisdiction because it came from the federal district court in Oregon. In default

of more specific guidance, we regard the general common law as highly probative of the agents' likely treatment from an Oregon court.

It is apparent, then, that the district court erred in failing to limit its inquiry to whether the government's law enforcement officers, agents Weiler and Maney, acted tortiously. For the reasons just discussed, we conclude that the two agents committed no tort under Oregon law, a conclusion that we are free to reach *de novo*. *In re McLinn*, 739 F.2d 1395, 1397 (9th Cir.1984) (en banc). From this conclusion, it follows that the summary judgment in favor of Arnsberg on his false imprisonment claim must be reversed, and that upon remand summary judgment must be entered in favor of the government on that claim.[6]

### B. The United States' Liability Directly under the Fourth Amendment

Arnsberg argues that we should imply a right of action against the United States directly under the fourth amendment. In essence, he asks us to extend the theory of *Bivens v. Six Unknown Named Agents*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), to include a remedy against the United States. The district court rejected Arnsberg's argument.

If we were to imply the cause of action Arnsberg requests, summary judgment under it in his favor would be required. Under Arnsberg's constitutional theory, liability would be predicated not only on the actions of the government's law enforcement officers but also upon the actions of its adjudicative officials. As we have discussed, the facts show that Magistrate Leavy made an erroneous determination of probable cause and thereby caused Arnsberg to be subjected to an unreasonable seizure. A further boon accruing to Arnsberg would be that he could recover puni-

tive damages under his constitutional theory. *Compare Carlson v. Green*, 446 U.S. 14, 21–22, 100 S.Ct. 1468, 1472–1474, 64 L.Ed.2d 15 (1980) (punitive damages available in *Bivens* actions), *with* 28 U.S.C. § 2674 (1982) (punitive damages not available in the FTCA actions).

The doctrine of sovereign immunity, however, prevents us from extending *Bivens* in the manner which Arnsberg seeks. "In a suit against the United States, there cannot be a right to money damages without a waiver of sovereign immunity...." *United States v. Testan*, 424 U.S. 392, 400, 96 S.Ct. 948, 954, 47 L.Ed.2d 114 (1976). Arnsberg argues that because his *Bivens* right is a constitutional one, a non-constitutional doctrine of sovereign immunity ought not to take precedence over it. While this argument is not without logic, it is foreclosed by our recent ruling in *Holloman v. Watt*, 708 F.2d 1399, 1401–02 (9th Cir.1983), *cert. denied*, — U.S. ——, 104 S.Ct. 2168, 80 L.Ed.2d 552 (1984), that *Bivens* does not provide a means of cutting through the sovereign immunity of the United States itself. *Accord American Association of Commodity Traders v. Department of the Treasury*, 598 F.2d 1233, 1235–36 (1st Cir.1979); *Duarte v. United States*, 532 F.2d 850, 851–52 (2nd Cir.1976).[7]

### III. Arnsberg's *Bivens* Claim Against the Individual Agents

Arnsberg argued below that agents Weiler and Maney subjected him to an unreasonable seizure under the fourth amendment; therefore he claimed compensatory and punitive damages under *Bivens*. The district granted summary judgment on Arnsberg's *Bivens* claim in favor of the agents, holding that the agents were entitled to qualified immunity because they acted in reasonable good faith. On appeal,

---

6. Our disposition of the false imprisonment claim makes it unnecessary for us to rule upon the government's contention that it is entitled to assert the qualified immunity of its officers in defense of that claim.

7. Actions brought under the taking clause of the fifth amendment are, of course, an exception to the rule that sovereign immunity is a bar to damages against the United States for direct constitutional violations. *See Duarte*, 532 F.2d at 852 n. 3.

Arnsberg argues that summary judgment should have been granted in his favor; in the alternative, he argues that at the least a material factual dispute exists as to his *Bivens* claim, thus precluding summary judgment in favor of the government.

Arnsberg presents two theories as to why the district court should have granted summary judgment in his favor. First, Arnsberg argues that Weiler and Maney should have known that a material witness arrest warrant could not have been validly issued; therefore, they should have refused to execute the warrant. Second, he contends that Weiler and Maney should not have executed the warrant because of the facial discrepancy it contained.

■ We reject Arnsberg's first argument without even reaching the question whether the agents are protected by any qualified immunity, *see Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). Although we do hold that Arnsberg's arrest warrant is invalid even if considered as a material witness arrest warrant, that is not an obvious conclusion. Reasonable attorneys could disagree with our probable cause assessment. It would be plainly unreasonable to rule that the arresting officers, Weiler and Maney, must take issue with the considered judgment of an assistant United States Attorney and the federal magistrate. Not only would such a rule cause an undesirable delay in the execution of warrants, but it would also mean that lay officers must at their own risk second-guess the legal assessments of trained lawyers. The Constitution does not require that allocation of law enforcement duties. *Baker v. McCollan,* 443 U.S. 137, 145–46, 99 S.Ct. 2689, 2695–96, 61 L.Ed.2d 433 (1979).[8]

■ Arnsberg's second argument, which is based on the warrant's facial discrepancy, also falls before the principle that the Constitution requires no more than a "reasonable division of functions between law enforcement officers, committing magistrates, and judicial officers." *Id.* at 145, 99 S.Ct. at 2695. As we have already indicated, the discrepancy which appeared on the face of the warrant is not a serious one. To a person inattentive to legal details, "failure to appear before the federal grand jury" could seem a reasonable description for the "offense" of being a material witness whose presence cannot practically be secured by subpoena. It would be unreasonable, and hence it is not constitutionally required, to demand that arresting officers regularly scrutinize warrants for such technical discrepancies. *Cf. Johnson v. Miller,* 680 F.2d 39, 41 (7th Cir.1982) (arresting officers do not have a constitutional obligation to review warrants for discrepancies between the description in the warrant and the appearance of the person to be arrested).[9]

■ Arnsberg was not entitled to summary judgment on his *Bivens* claim: the arresting officers committed no fourth amendment violations. We reject Arnsberg's argument that a material issue of fact precluded the district court from entering summary judgment in favor of the agents. Under the established facts, the agents are insulated from liability by a qualified immunity because "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982).[10]

---

**8.** We reserve the question of whether law enforcement agents have a constitutional obligation to refuse to execute an arrest warrant when its invalidity is or should be obvious to them. We do observe, however, that the Seventh Circuit has held constitutional even the action of an officer who had reason to know that he was executing a mistakenly issued warrant. *See Johnson v. Miller,* 680 F.2d 39, 41–42 (7th Cir.1982).

**9.** We reserve the question of whether law enforcement officers have a constitutional duty to refuse to execute an arrest warrant which contains an obvious and serious discrepancy. *Cf. supra,* n. 8.

**10.** The *Harlow* standard may be applied even through the events in issue occurred before *Harlow* was decided. *See Brewer v. Blackwell,* 692 F.2d 387, 398–99 (5th Cir.1982) (so applying *Harlow* without discussion). In any event, the

Before seeking a warrant for Arnsberg's arrest, agents Weiler and Maney consulted with assistant United States Attorney Robinson. The agents accurately recounted the difficulties they encountered in attempting to serve Arnsberg personally. Robinson concluded that the facts justified the issuance of a material witness warrant pursuant to 18 U.S.C. § 3149 and he requested that Magistrate Leavy issue a material witness warrant for Arnsberg's arrest. The agents reasonably relied on Robinson's belief that Arnsberg's arrest was legal. They had no reason to doubt Robinson's assessment of probable cause.

This case is factually distinguishable from *Dellums v. Powell,* 566 F.2d 167 (D.C. Cir.1977), *cert. denied,* 438 U.S. 916, 98 S.Ct. 3146, 57 L.Ed.2d 1161 (1978), in which the District of Columbia Circuit held that the advice of counsel did not render a police officer's belief reasonable and entitle him to a qualified immunity for the illegal arrests that he made. In *Dellums,* unlike this case, the police officer's conduct exceeded the scope of counsel's advice. Also, the police officer in *Dellums* was fully acquainted with the controlling case law and did not need the advice of counsel to assess probable cause. *Id.* at 185. In this case, however, as we explained earlier, reasonable attorneys could disagree about our probable cause assessment. We, therefore, should not expect agents Weiler and Maney to have determined independently whether probable cause existed. Counsel's advice would prevent a reasonable person from knowing that Arnsberg's constitutional rights were being violated. We hold that agents Weiler and Maney are immune from *Bivens* liability as a matter of law under the accepted facts.

The judgment of the district court in favor of the United States and the individual defendants on the *Bivens* claim is affirmed. The judgment in favor of Arnsberg on his claim under the FTCA is reversed and the case is remanded with directions to the district court to enter summary judgment for the United States on that claim.

AFFIRMED IN PART, REVERSED IN PART AND REMANDED.

agents here would also qualify for immunity under the prior standard as having reasonably believed in good faith that the arrest was constitutional. *Pierson v. Ray,* 386 U.S. 547, 557, 87 S.Ct. 1213, 1219, 18 L.Ed.2d 288 (1967); *Smiddy v. Varney,* 665 F.2d 261, 266 (9th Cir.1981), *cert. denied,* 459 U.S. 829, 103 S.Ct. 65, 74 L.Ed.2d 66 (1982).