Argued and submitted May 21, 1993, reversed and remanded July 27, petition for review denied September 27, 1994 (320 Or 271)

## Lois STRANAHAN,
*Appellant,*

*v.*

## FRED MEYER, INC.,
a Delaware corporation,
*Respondent.*

(9110-06504; CA A75224)

878 P2d 1123

Mark McDougal argued the cause for appellant. With him on the briefs was Gregory Kafoury.

Charles F. Hinkle argued the cause and filed the brief for respondent.

Before Deits, Presiding Judge, and Riggs and Haselton,* Judges.

DEITS, P. J.

---

\* Haselton, J., *vice* Durham, J.

## DEITS, P. J.

Plaintiff was arrested for trespass, at defendant Fred Meyer's instance, while attempting to gather initiative petition signatures on the premises of one of defendant's stores on October 11, 1989. After the criminal proceedings were terminated without a conviction, plaintiff brought this action, stating claims for false arrest and malicious prosecution and seeking compensatory and punitive damages. The trial court granted defendant's motion for summary judgment as to both claims. Plaintiff appeals and we reverse.

At the time that plaintiff was arrested, the issue of whether petition circulators were entitled to conduct that activity at large private commercial shopping locations without the owners' permission was proceeding through the trial and appellate courts of the state in two forms: criminal trespass cases against the circulators and proceedings by the store owners to obtain injunctive or related relief. The defendants in those cases asserted that they had the right under Article IV, section 1, and other provisions of the Oregon Constitution to gather signatures at the large commercial establishments. In the trespass cases that the parties cite, the trial courts had generally resolved that question against the defendants, and the appellate courts had not ruled by the time of plaintiff's arrest.

However, one of the equitable cases had been decided by the Oregon Supreme Court before the arrest here. It concluded in *Lloyd Corporation v. Whiffen*, 307 Or 674, 773 P2d 1293 (1989), that petition circulators could not be enjoined outright from collecting signatures at the shopping center involved there, although they could be held to reasonable time, place and manner regulations. The court stated that it based that conclusion on "subconstitutional" grounds, and explained its decision as a discretionary limitation on the exercise of equitable powers. However, the court exercised that discretion in order to avoid the "serious injury to the public interest" that would result from an interference with the constitutional initiative and referendum process. 307 Or at 684-85.

Approximately two months before plaintiff's arrest in the present case, we heard argument, and approximately

two months after the arrest, we made the first appellate decision in a trespass case arising out of petition activities. In *State v. Cargill*, 100 Or App 336, 786 P2d 208 (1990), *aff'd by an equally divided court* 316 Or 492, 851 P2d 1141 (1993), we held that the defendants could not be convicted of criminal trespass for gathering petition signatures at the Fred Meyer facility where the activity had taken place. The basis of our holding was that the defendants' exercise of rights under Article IV, section 1, made the store manager's order that they leave the premises unlawful, ORS 164.245(3)(b), and implicitly meant that the defendants' continued presence did not constitute the element of trespass of "remain[ing] unlawfully" on the premises. ORS 164.245(1); *see also Lloyd Corporation v. Whiffen*, 315 Or 500, 849 P2d 446 (1993).

In *Fred Meyer, Inc. v. McDonald*, 112 Or App 321, 828 P2d 1054 (1992), *rev den* 316 Or 382 (1993), we explained that *Cargill* did not apply to all Fred Meyer stores, but only to those that were of the size and other characteristics that provide the rationale for requiring their availability to petition circulators.

In *State v. Dameron*, 316 Or 448, 853 P2d 1285 (1993), the first of the trespass cases in which the Supreme Court issued an opinion, the lead opinion, in the 4-3 majority, held that the state had failed to prove that the defendant had "remained unlawfully" on the premises. The opinion explained that the state had not offered evidence that the Fred Meyer store in question was *not* "a large privately owned shopping center open to the public for commercial purposes," 316 Or at 462, of the kind where the defendant had the right to gather signatures under Article IV, section 1.[1]

■■ Against that background, we turn to the present appeal. Plaintiff first assigns error to the ruling on the false arrest claim. Defendant formulates the issue as being "what was the law of trespass in Oregon on October 11, 1989, when

---

[1] The Supreme Court's decisions in *Dameron* and *Cargill* were issued one week after the hearing on this appeal. *Cargill* was argued in this court in August, 1989, and was decided in January, 1990. We heard *Dameron* in March, 1990, and decided it the following month.

Our recitation of the development of the law in this area is meant only to explain the circumstances that are relevant to this case, and is not meant to be a comprehensive legal analysis.

these events occurred?" The answer to that question, as phrased, is not difficult. Defendant relies on a number of trial court decisions that preceded plaintiff's arrest, including the one that the Supreme Court later reversed in *Dameron*, to support its position as to what the law was. However, those decisions, insofar as they are contrary to the appellate courts' later decisions in *Cargill* and *Dameron*, are not relevant to what the law *was* at the time of plaintiff's arrest. The law on October 11, 1989, *was* what the appellate courts later said it was in *Cargill* and *Dameron*, the events of which occurred long before October 11, 1989. The earlier trial court decisions can be relevant to what defendant *thought* the law was. However, that mental state, even if it had been conclusively established, is not a defense to a false arrest action. *O'Brien v. Eugene Chemical*, 63 Or App 284, 286, 664 P2d 1106 (1983); *see also Napier v. Sheridan*, 24 Or App 761, 765, 547 P2d 1399, *rev den* (1976).

Under ORS 133.225, as we construed it in *O'Brien*, a private defendant's subjective good faith beliefs cannot assist it in a false arrest action, unless "a crime was in fact committed." 63 Or App at 286. Here, unless the store in question is not of the kind that the cases have held must be open to petition activities, plaintiff committed no crime. Defendant does not argue that its showing in support of its summary judgment motion established conclusively that the store in question is not of that kind.[2] Accordingly, the summary judgment on the false arrest claim was error.

■ Plaintiff's second assignment is directed at the summary judgment on the malicious prosecution claim. If the mental state that defendant contends arises from its reliance on the trial court rulings was conclusively established, that *could* be a defense to a malicious prosecution claim. Defendant cites *Rose v. Whitbeck*, 277 Or 791, 795, 562 P2d 188, *mod* 278 Or 463, 564 P2d 671 (1977), for the proposition that malice in instituting a proceeding and lack of probable cause for the proceeding are essential elements of the tort of malicious prosecution. However, we do not agree with defendant

---

[2] At least arguably, plaintiff could also be guilty of a trespass had her activities at the store been in violation of reasonable regulations applicable to signature gathering activities there. Again, however, defendant does not argue that that was the case.

that its showing in support of the summary judgment motion established the absence of those elements. The fact that there were favorable trial court decisions is not conclusive, in the light of the fact that there were trespass cases pending on appeal and at least one case that had been decided by the Supreme Court that a fact finder could conclude alerted defendant to the principle that the right of store owners to exclude signature gatherers is not universal or absolute.

The evidence in the summary judgment proceeding also permitted an inference that the multiplicity of litigation from which defendant selects the trial court decisions on which it relies was at least partly a product of defendant's ongoing zeal in bringing actions and arresting petition circulators, during a time when litigation was pending that defendant knew could resolve the doubtful question of whether it had the right to make the arrests. In addition, there was evidence about the circumstances surrounding the arrests of plaintiff and others, and about defendant's communications with and actions in connection with law enforcement authorities which, along with the other evidence we have discussed, could support a finding adverse to defendant on the malice and probable cause issues.

Summarily stated, defendant's argument under this assignment posits that a factfinder must *necessarily* find that its motivation was good because its asserted beliefs about the law had not yet been rejected at the time that it arrested plaintiff. We do not agree that contrary inferences about defendant's motives and objectives were impermissible under the evidence. Defendant emphasizes that the state of the law was unsettled and suggests that that uncertainty provided it with an absolute defense on the issue of probable cause. However, the fact that the law was uncertain and that defendant had a tenable view of how the uncertainty would be resolved does not mean that its actions were necessarily motivated by that view of the law. Indeed, given the uncertain state of the law, a jury would be just as free to conclude, *inter alia*, that defendant's motive was to harass those who held and acted on the opposite view of the question that defendant was fully aware was then pending before the appellate courts in trespass cases arising out of activities at defendants' stores

and complaints by defendant.[3] We conclude that there are material and disputed factual questions, and that the summary judgment on the malicious prosecution claim was incorrectly allowed.

■    In her third assignment, plaintiff challenges the court's allowance of summary judgment for defendant on the claim for punitive damages. Defendant notes that there was no direct ruling on that issue in the trial court, because the claims for damages automatically fell with the summary judgment on the substantive claims. Defendant nevertheless agrees with plaintiff that we should address the merits of the issue, because it was fully presented in the trial court and here. There is enough before us to enable us to decide the question, and we will do so. *See Zehr v. Haugen*, 318 Or 647, 656-58, 871 P2d 1006 (1994).

Defendant's argument here, even more explicitly than under its other assignments, is that the state of the law was uncertain at the time of plaintiff's arrest. Therefore, based on its contemporaneous understanding of the trespass law and on that of the trial courts on which it now relies, defendant maintains that it could not have had the culpable mental state necessary for the imposition of punitive damages. Like its argument in response to the second assignment, defendant's contention rests on the mistaken premise that the fact that an arguably reasonable basis for one's actions exists *necessarily* means that they could not have been taken for other reasons, or could not have been motivated or accompanied by malice or other injurious mental states.

Defendant relies on *Williams v. Carolina Coach Co.*, 111 F Supp 329 (ED Va 1952), *aff'd* 207 F2d 408 (4th Cir 1953), for the proposition that punitive damages are not assessable against one who acts in "good faith reliance upon a

---

[3] As in *State v. Cargill, supra*, 100 Or App at 348, defendant does not argue here "that [plaintiff's] activities substantially interfered with Fred Meyers' commercial activity, [or] had a serious economic impact on the company." There is also no argument that the activity subjected customers to any cognizable inconvenience or annoyance.

In places in its argument, defendant suggests that the absence of appellate decisions, and the existence of favorable trial level decisions, means *ipso facto* that it had probable cause for the arrest at the time it was made. However, at least for purposes of summary judgment, the best that can be said for defendant's position is that the law was unsettled, as it asserts in other parts of the argument.

statute subsequently held unconstitutional." Assuming without deciding that that proposition is also Oregon's law, defendant is not assisted. The issues in this case include whether defendant did act in good faith and, depending on which party's formulation of the question is eventually accepted, whether defendant misused a constitutional statute to wilfully or recklessly undermine the constitutional rights of others. We are unprepared to say at this pre-trial stage that punitive damages cannot be proved or recovered.[4]

Reversed and remanded.

---

[4] Our disposition is not affected by *Honda Motor Co. v. Oberg*, ___ US ___, 114 S Ct 2331, 129 L Ed 2d 336 (1994). We understand that decision to require a change in previous Oregon law regarding the authority of courts to re-examine a *factfinder's determination* of the appropriate *amount* of punitive damages. In this case, we deal with the different issues of whether it can be determined *before trial*, as a matter of law, that the plaintiff cannot establish that the defendant's conduct is of a kind that *warrants any* punitive damages.